### CAROL VIRGINIA GLEASON v. BEN GEARY.[1]

March 26, 1943.

No. 33,343.

500

*Thomas J. Spence* and *Arnold W. Brecht,* for appellant.
*Freeman, King & Geer,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff's action to recover damages for personal injuries re-

sulted in a directed verdict for her adversary, and she appeals from an order denying her motion for new trial.

Plaintiff was employed as a "chicken picker" by Boote Hatchery & Packing Company at Worthington, whose business is that of buying, dressing, and preparing poultry and other farm products for the market. Defendant's business is that of a building contractor. In August 1940 he was engaged by the hatchery to do some repair work at its plant. This job included breaking up and removing an old cement floor and reconstructing it. Some of the hatchery's men assisted defendant's workmen in the job. The reason for this arrangement was to save employing more expensive labor, the hatchery men being paid at a lower rate than that paid defendant's workmen.

During the evening and far into the night of August 28, a crew of men composed partly of hatchery employes and employes of defendant were at work breaking up and removing a section of the old cement floor and placing reinforcing steel in that area preparatory to laying the new floor the next morning. The area so prepared was located between the dressing room of women employes (where they changed their street clothes for their working apparel) and the "roughing" room, where they worked. As the situation then was, they could not go from their dressing room to their place of employment unless a bridge or some other contrivance was built over the portion of the area to be laid to new cement. The hatchery superintendent requested defendant to devise and construct such a means of egress, and defendant's workmen did so between 7:00 and 7:30 in the morning of August 29. Plaintiff entered the dressing room before the men got at the job. About half an hour later, when she was ready to go to work, she saw the new structure and realized at once its purpose. It is appropriately referred to in the record as a "catwalk." When plaintiff reached about the middle of it it collapsed, causing her serious injuries. Predicating her cause upon defendant's negligence in its construction, she brought this action. It is conceded that if the ordinary negligence action lies she established her cause.

To avoid such liability, defendant pleaded, and it was admitted by the reply, that both employers, *i. e.,* the hatchery and defendant, were under the workmen's compensation act. Therefore, so defendant contends, and the court adopted his view, since plaintiff has elected to accept compensation under the amendment to the act here in question, she cannot now maintain a common-law negligence action against him. The barrier is said to be Minn. St. 1941, § 176.06, subd. 1 (Mason St. 1940 Supp. § 4272-5[1]).

Many cases involving this troublesome section have come here for review. In the memorandum opinion of the trial judge, after reviewing many of them, he concluded that these "unfortunately, but perhaps unavoidably, do not give any too accurate a -pattern to follow." As to the first case there discussed, Uotila v. Oliver I. Min. Co. 165 Minn. 475, 206 N. W. 937, he thought we had not attempted "to construe the amendment, or lay down rules governing the application of it." As to subsequent cases, refer- ring specifically to Rasmussen v. George Benz & Sons, 168 Minn. 319, 324, 210 N. W. 75, 212 N. W. 20, and Anderson v. Interstate Power Co. 195 Minn. 528, 532, 263 N. W. 612, which have to do with the delivery of commodities by the vendor to his purchaser, he deemed these to be helpful, as to the facts here presented, only to the extent "they may lay down the general rules of construc- tion of the act." It was his thought that the general rule to be followed is that stated in the Rasmussen case (168 Minn. 324, 210 N. W. 77) : "Business is related when the parties are mutually or reciprocally interested in a commercial way, or where the business of one has a necessary relation toward or in conjunction with the other." With this as his general guide and upon the language employed in the decision of Seidel v. Nicollet Ave. Properties Corp. 202 Minn. 569, 279 N. W. 570, the judge concluded that an instructed verdict for defendant was inescapable.

The importance of the question presented is obvious. Difficulty of solution should not frighten us from trying to find a more "accurate pattern" for the bench and bar "to follow" than those one may gather from our prior decisions.

In the Anderson case we discussed and sought to distinguish the facts there appearing from those in the Rasmussen case, but in deciding it we obviously limited the scope and effect of the test laid down in the Rasmussen case, for we there determined (195 Minn. 532, 263 N. W. 614):

"We hold that the mere supplying of a necessary product, such as electric power, does not create the relationship of a common enterprise. Nor does the fact that both companies had sent out employes to locate the trouble alter the situation. It was not a joint or concerted action. Each company was acting independently of the other. The admitted facts show that plaintiff and George Penny, defendant's employe, were each acting individually and for their separate employers. That both parties were seeking to locate trouble on their respective lines in approximately the same location at approximately the same time was incidental and fortuitous and did not create the legal relationship of common enterprise."

Again, in the later case of Tevoght v. Polson, 205 Minn. 252, 255, 285 N. W. 893, 894, we said that in the Anderson case:

"* * * this court held squarely that the mere supplying of a product by one employer to another did not bring the employers within either clause (a) or clause (b) of the amendment, that is, the vending and delivery of supplies upon the premises of one of the employers does not amount to either a furtherance of a common enterprise or to the accomplishment of the same or related purposes. We must therefore hold that the rule announced in the Rasmussen case is modified to the extent that it does not apply in a situation such as that now before us where one employer is merely engaged in delivering a commodity to another employer."

Our latest case is that of Gentle v. Northern States Power Co. 213 Minn. 231, 235, 6 N. W. (2d) 361, 363, where we again held (citing the Tevoght and Anderson cases) that it is now "definitely settled" that "the vending and delivery of supplies by a third party to the workman's employer does not amount to either a

furtherance of a common enterprise or to the accomplishment of the same or related purposes."

Going back to the Seidel case, 202 Minn. 569, 572, 279 N. W. 570, we have this factual background: Seidel's employer was in the business of repairing electric elevators. Defendant owned a large office building where two such elevators were operated side by side. The elevator doors opening into the basement were out of repair, and plaintiff's employer undertook the repair job. New parts were needed to make the doors operate properly. Since it was necessary for defendant in the conduct of its business to keep one elevator in continual use, plaintiff proceeded to repair the other. In doing the work (202 Minn. 571, 279 N. W. 571) "plaintiff desired elevator No. 2 to come down below the first floor so as to pass therefrom an electric wire with a light bulb into the shaft of No. 1," where he was then working. Defendant's servant, in attempting compliance with this direction, "through some misunderstanding," lowered the wrong one, beneath which plaintiff was working. As a consequence plaintiff "was severely injured." A majority of this court thought that a common-law negligence action could not be maintained because the work being done came (202 Minn. 572, 279 N. W. 572)—

"within the quoted language of both (a) and (b). The enterprise common to both employers here was the repairing of these elevator doors—defendant's need required it to be done, and the desire of plaintiff's employer to profit by doing the work. * * * Defendant's servant at plaintiff's bidding attempted to aid in the accomplishment of the same or related purposes in operation on the very premises where the injury was received."

Mr. Chief Justice Gallagher and Mr. Justice Loring concurred in the result, saying, in view of certain cases there cited (202 Minn. 575-576, 279 N. W. 573):

"* * * it may properly be held that plaintiff's employer and defendant were engaged in a course of business in the furtherance of 'related purposes,' in operation on the premises where the in-

jury was received. We confess, however, that *we are unable to see how a person engaged in the business of operating an apartment building equipped with elevators and one engaged in the business of repairing elevators can be engaged in a course of business in 'furtherance of a common enterprise.'* So to hold would mean that everyone making repairs to or furnishing material for an apartment or commercial building would be engaged in a common enterprise with the owner of the building. We do not believe that such construction was ever intended by the legislature. *With that part of the opinion we are unable to agree."* (Italics supplied.)

The Seidel opinion was filed April 29, 1938. It is interesting to note that on July 29, 1938, the opinion in Pittsburgh P. G. Co. v. Carey (8 Cir.) 98 F. (2d) 533, was filed. The Seidel case was not referred to, probably because it had not been called to the court's attention, but our prior cases were. They are cited in 98 F. (2d) p. 536. There plaintiff (Carey) was employed by an electric company engaged in installing electric wiring in a garage at St. Cloud. Appellant (the glass company) was engaged in installing plate glass in the building. A big crate of glass had arrived on a truck in charge of its employes. They needed additional help "to give them a lift" and requested Carey and another to lend a helping hand. During the unloading the braces of the crate broke, and its contents fell upon plaintiff, causing injuries. The question presented by appellant was whether this statute permitted the maintenance of a common-law negligence action, since both employers and their employes (98 F. [2d] 536) "were engaged in a common enterprise, to-wit, the construction of the Holt Garage, and the injury complained of was received 'in the due course of business,' and 'in the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof.'" The trial court had submitted the case to the jury as a common-law action, and plaintiff had a verdict. On appeal there was an affirmance, because, said the court (98 F.

[2d] 536, 537), upon "an examination" of the decisions of this court, which "must control here":

"The two companies involved were not engaged in the same or related purposes, were not mutually or reciprocally interested in a commercial way, nor had the business of one a necessary relation toward or in conjunction with the other."

We refrain from further citation of our cases, since these may be readily found under notes in 6 Dunnell, Dig. & Supp. § 10407.

■ There can be no doubt that the amendment was remedial legislation. Therefore it should receive such fair and liberal construction "as to make it a workable one, thereby giving force and effect to the legislative purpose." Tomasko v. Cotton, 200 Minn. 69, 77, 273 N. W. 628, 632. It should be "so construed as to give effect to the obvious legislative intent." 6 Dunnell, Dig. & Supp. § 8937, and cases under notes.

■ Legislative intent, however, is to be ascertained from the language employed by the lawmakers. But if that language be doubtful "that construction must be adopted which militates against a forfeiture," where that was the clear legislative purpose. Needles v. Keys, 149 Minn. 477, 479, 184 N. W. 33, 34. The general subject is treated and sustaining cases are cited in 6 Dunnell, Dig. & Supp. § 8940, and cases under notes. A literal construction is not to be adopted if thereby the general policy and object of the statute are "plainly at variance with * * * the legislation as a whole." United States v. American Trucking Assns. 310 U. S. 534, 543, 60 S. Ct. 1059, 1064, 84 L. ed. 1345, 1351.

■ That the language of the present enactment comes well within the doubtful class is obvious. The cases we have discussed demonstrate that.

■ Prior to the adoption of the workmen's compensation act the injured workman was limited to the common-law action for negligence. He could proceed against his employer or against anyone else whose negligence, as defined by the law and within its limits, had caused him harm. Under the compensation act, adopt-

ed in 1913, as construed in Hansen v. N. W. Fuel Co. 144 Minn. 105, 108, 174 N. W. 726, 727, the person injured in the course of his employment could proceed against his employer, "or against a third party by a common law action for negligence." If he recovered in such an action he could have "no greater amount than that fixed by the compensation act." If he took under the compensation act, "his employer is subrogated to his common law action against the third party," and the employer in his action against the third party was "limited to the amount payable under the compensation act." That case was decided November 7, 1919.

Later, in 1921, the legislature adopted L. 1921, c. 82, § 31, which superseded L. 1913, c. 467, § 33. This was amended by L. 1923, c. 279, § 1 (Mason St. 1927, § 4291). By L. 1937, c. 64, § 5, § 4291 was reënacted and is now Minn. St. 1941, § 176.06, so that the prohibition in respect to the right of the injured workman against the negligent third party applies "only where the employer liable for compensation and the other party * * * legally liable for damages were both * * * engaged in the due course of business, (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof, and not otherwise." We think the obvious legislative purpose in adopting the amendment was to restore to the *injured person* an enlarged remedy against the negligent third party. Under subd. 2 of the amended act, provision is made for reimbursement to his employer to the extent of his contribution under the act, the workman taking the excess. It is thus apparent that the blame is placed where it belongs, upon the party at fault, where of right it should be. That was the view of this court in Tevoght v. Polson, 205 Minn. 252, 254, 285 N. W. 893, 894, where we said, by way of discussion rather than decision:

"No other state has such a provision as that incorporated in this amendment [L. 1923, c. 279, § 1], and it was left to this court to interpret its provisions, which especially in the case of subd. (b) are rather vague and uncertain. *The legislative history of c. 279*

*throws no light whatever upon the purposes of the legislature or the extent to which it sought to restore to the employe his common-law right of action. It may be that it intended that his common-law right of action should only be eliminated in situations like those where contractors and subcontractors are engaged on the same project and their employes exposed to the hazards created by such mutual engagements."* (Italics supplied.)

Unquestionably the legislative purpose was to enlarge the rights and remedies of the injured workman. His employer, under the original act, was well taken care of, and these rights under the second subdivision of the amended act were retained for him. He has lost nothing by the change. Since it was the injured workman the legislature sought to help, we should now say without equivocation that (205 Minn. 254, 285 N. W. 894) the legislature "intended that his common-law right of action should only be eliminated in situations like those where" several employers "are engaged on the same project and their employes exposed to the [same or similar] hazards created by such mutual engagements."

And that was the view of Mr. Justice Pirsig in his concurring opinion in Gentle v. Northern States Power Co. 213 Minn. 231, 237, 6 N. W. (2d) 361, 364:

"Undoubtedly, it was the thought of the legislature that it was unjust that the rights and protection afforded several workmen of different employers under the workmen's compensation act should be different when these employes were working together on the same premises, on the same project, and subject to the same risks of injury. The subdivision under consideration sought to carry out that policy."

Speaking of our prior cases he said (213 Minn. 238, 6 N. W. [2d] 364):

"Misled by the confusing language used in the subdivision, we have not proceeded from this point of view. We have examined not the common activities of the employes but rather the common purposes or enterprise of the employers. These tests have only

an indirect relation to the policy sought to be effectuated, and, in consequence, endless and fruitless litigation has come before this court over their application. * * * The statutory terms *'common enterprise' and 'same or related purposes' of the employers should be construed to mean that their employes were engaged in some common activity which brings them within the policy underlying the subsection."* (Italics supplied.)

In the present case it is plainly to be seen that defendant, an independent construction contractor, and the hatchery were not engaged in a "common enterprise" or in the "accomplishment of the same or related purposes" at the time and place of plaintiff's injury. True, they were both interested in having the repair job done, but that is true whenever one contracts for any improvement, whether a repair job or new construction. Common enterprise could be said to have existed while the hatchery workmen were engaged with those regularly employed by defendant, since they were working together and exposed to the same risks. In that event, if harm had come to one of them, obviously it would be but fair and just that, since both employers were under the act, the workmen so employed should stand in the same relation to each other and to their employers as if they were working for a common employer.

■ Plaintiff, a "chicken picker," was clearly not engaged in anything relating to the repair work or the building of the catwalk. Let us suppose that in the Seidel case, 202 Minn. 569, 279 N. W. 570, plaintiff's employer had sent his secretary to defendant's building on some errand in the line of her employment, that one of defendant's employes had negligently left an elevator door open so that thereby she was led to believe that it was safe for her to enter, that she did so enter and fell into the elevator shaft and thereby received injuries, would she be deprived of her common-law right of action? It is doubtful that anyone would conclude that she was deprived of that right. For the same reason, plaintiff, a chicken picker for the hatchery, ought to be possessed of the same right.

The workmen's compensation act was enacted to simplify and rearrange the obligation of the master to the servant in relation to injuries received in the employment. There was no intent to change or interfere with the relation between the servant and third persons or to interfere with the servant's right of action against third persons, except as that right might affect compensation from the master. To step outside of that sphere and deny the servant his right of recovery against third persons would be to unjustly discriminate against him as compared with other persons injured by third persons and to deprive him of a cause of action left to others. To do so would be beyond the scope of the act as expressed in its title and would not be germane to its purpose. The act evinces no purpose to deprive an employe of such a cause of action under the ordinary relationship, although providing for subrogation in proper cases. It confines the deprivation of such causes to servants of masters engaged in a common enterprise or in related purposes on the premises where the injury occurs. The strict tenor of the words used places the distinction solely on the "common enterprise" or "related purposes" of the masters, regardless of whether the injured servant be engaged in such enterprise or purpose; but we must interpret the language in the light of the purpose and intent of the act, as this court did in construing the original railroad fellow-servant act, which in its tenor applied to all servants of railroads, whether exposed to the extra hazards peculiar to railroading or not. This court held that to so apply it would be unconstitutional discrimination in favor of those not exposed to railroad hazards. It would allow them to recover for injuries caused by the negligence of a fellow servant in circumstances like those where servants of nonrailroad masters could not recover. It held that the legislature intended only to apply the law to servants exposed to the extra hazards of railroading. So construed, the classification was justified. Lavallee v. St. P. M. & M. Ry. Co. 40 Minn. 249, 41 N. W. 974. Here, we think the legislature intended only to deny common-law rights to servants who engaged in the "common enterprise" or "related

purposes" of the masters and not to deny such rights to servants of the same master who are not so engaged. Thus there is no unjust discrimination. There is ground for such classification, because, as to common enterprises and similar related purposes, the masters have joined forces and in effect have put the servants into a common pool. To deprive the servant of his common-law action when he is not engaged in the common enterprise or related purpose is to deprive him of a cause of which others whose masters are not so engaged are not deprived in like circumstances, simply because in some other branch of the master's activities on the premises the master has joined forces with the tortfeasor. We do not regard this as a sound basis for classification.

We adopt this view with confidence that we have arrived at the true solution of the problem. All expressions in our former opinions inconsistent with this conclusion are overruled.

Order reversed.

PETERSON, JUSTICE (dissenting).

Some further facts, which I think control decision, should be stated. The Boote hatchery and defendant were engaged in the common enterprise of repairing the floor to which the construction and use of the catwalk was an incident. Defendant furnished the materials and part of the labor. Boote furnished part of the labor. Their employes worked side by side in tearing up the old floor, putting the reinforcing steel in place preparatory to pouring concrete, and in all the operations. Boote and defendant had two general purposes in view, viz.: (1) To save expense by using Boote's labor as far as possible, because it was cheaper than defendant's; and (2) to get the work done efficiently without interrupting the operation of Boote's business. To accomplish these purposes, some of Boote's employes worked part time picking chickens and part time on the repair work, and the catwalk was installed to enable Boote's employes to get across the new floor to be poured without coming in contact with it.

The instant case is ruled by Olson v. Thiede, 177 Minn. 410, 225 N. W. 391, holding that the owner of property and a con-

tractor engaged by him to make repairs thereon are engaged in the furtherance of a common enterprise or in the accomplishment of related purposes within the meaning of the statute where one contributes labor and the other materials for such repairs. The only difference between the Thiede and the instant case is that in the Thiede case the owner supplied material to the contractor to use in making repairs on his property, while in the instant case the owner supplied part of the labor. But in both cases the owner made a direct contribution to the accomplishment of the purpose he and the contractor were seeking to achieve, *viz.*, the repair of the owner's buildings. In both, the repairs were a joint and concerted enterprise. See Anderson v. Interstate Power Co. 195 Minn. 528, 263 N. W. 612.

■ While the majority opinion entirely ignores the case of Olson v. Thiede, 177 Minn. 410, 225 N. W. 391, it cannot escape the impact of its rule upon the instant case. Although there was no request therefor and the point was not raised, and although plaintiff has submitted her case under the statute as construed in our prior decisions, the court on its own motion and without argument has in effect adopted an additional test of liability not found in the language of the statute. To the statutory test of the common activities of the third party and the injured employe's employer, under which the third party is not liable to the employe under the general law where the third party and the employer are engaged in the furtherance of a common enterprise or in the accomplishment of the same or related purposes, the court has added a further test, which is not found in the language of the statute, namely, the common activities of the *employes* of the third party and of the *employes* of the injured employe's employer, under which the third party is liable, unless in addition to such common activity between him (the third party) and the injured employe's employer the employes of both the third party and of such employer are exposed by the work being done to common risks of injury.

The court reaches its decision by the process of construction. This process is that the language of the statute is of doubtful meaning; that construction must be invoked to discover the true meaning; that, although the statute in terms provides that an employe shall not have a right of action against a third party subject to the act, who is engaged with the injured employe's employer in furtherance of a common enterprise or in the accomplishment of the same or related purposes, the real intention was not to deprive an injured employe of such right of action unless in addition the employes of the third party and of the injured employe's employer were exposed by the work being done to the same or similar risks, for the reason that the statute is one to restore employe's rights of action against third persons, and that, if not for other reasons, such a result is compelled in order to avoid unconstitutionality resulting from distinguishing between injured employes and others in their right to sue others than their employers. To make such a construction possible, all our cases inconsistent with the results announced are overruled. I cannot assent to the methods of construction employed or to the reasons given to justify them.

(a) The language of the statute is not of doubtful meaning. The expression "common enterprise" was used to define the work in which a servant was engaged under the fellow-servant rule. Mr. Justice O'Brien, who was counsel for the commission which drafted the workmen's compensation act and who was its draftsman, speaking for the court in Schoen v. C. St. P. M. & O. Ry. Co. 112 Minn. 38, 42, 127 N. W. 433, 435, 45 L.R.A.(N.S.) 811, said of the fellow-servant rule that "it can only be invoked as to servants engaged in prosecution of a *common enterprise."* (Italics supplied.) In Kelly v. Tyra, 103 Minn. 176, 114 N. W. 750, 751, 115 N. W. 636, 17 L.R.A.(N.S.) 334, we spoke of servants employed by different contractors engaged in erecting a building as being engaged "in a common employment" to make possible by their co-operation "common objects." It is said that fellow servants must be engaged "in the same general business." 4 Dunnell, Dig.

§ 5947, where our cases are collected. In Jemming v. G. N. Ry. Co. 96 Minn. 302, 314, 104 N. W. 1079, 1 L.R.A.(N.S.) 696, the words "common employment" to accomplish the same "ultimate object" were used. In the texts, equivalent expressions are used to define the relationship among employes. For example, in 35 Am. Jur., Master and Servant, p. 803, § 380, the text states that fellow servants must be "engaged in performing duties and services for the *same* general *purpose*." (Italics supplied.)

Heretofore, we have experienced no difficulty in determining what rule to apply. All the cases cited in the majority opinion and others[2] have uniformly applied and adhered to the language of the statute. In every one of them the test of liability has been not the common activities of the *employes* of the third party and of the *employes* of the injured employe's employer, but the common activities of the third party and of the employer. In Olson v. Thiede, 177 Minn. 414, 225 N. W. 391, *supra,* we said that the facts "clearly" showed a common enterprise or a related purpose. Not until Gentle v. Northern States Power Co. 213 Minn. 231, 237, 6 N. W. (2d) 361, 363, was there any suggestion—and this by a single member of the court—that the common activities of the *employes* should be considered determinative. The suggestion was there inferentially rejected.

The statute but uses terms long deemed by this and other courts and by text writers clearly to define similar concepts under analogous circumstances. It is doubtful, to say the least, whether or not the court's efforts to redefine terms which are themselves definitions—for that is what it is doing—makes for increased clarity. A thing may be overdone, as, for example, "painting the lily." By stirring, clear water may be made muddy.

(b) True, while the statutory rule is plain enough, its application to a given set of facts may involve difficulty, as the large number of cases involving the construction and application of the statute plainly demonstrates. It must be remembered also that it is

---

[2] Over 25 cases decided by this court and the federal courts supporting this view are collected in the notes to 6 Dunnell, Dig. & Supp. § 10407.

equally impossible to formulate a precise rule defining *when* employes are exposed to common hazards of their employment.

"All the decisions that have been rendered and all the textbooks that have been written have not succeeded in giving a definition of who are fellow servants which is plain and broad and comprehensive enough to be universally applicable or to be universally accepted. * * * The reason for all which arises from the fact that the relations between the two persons employed by the same master vary in almost every case. Fellow servant is therefore a relative term, which must be applied to the special conditions presented in each case." Glover v. Kansas City B. & N. Co. 153 Mo. 327, 342, 55 S. W. 88, 92.

Likewise, what is in furtherance of a "common enterprise" or in the "accomplishment of the same or related purposes" depends on the facts in each case. Note, 15 Minn. L. Rev. pp. 257, 258.

However desirable it may be to have a definite *pattern* for deciding cases, in the very nature of things no such result is attainable. What is the pattern sought? If it is a rule of law, the statute in question answers the quest. If it is a formula to be applied mechanically in resolving fact situations, the answer must be that the facts must be found and the rule applied in cases arising under the statute the same as in other cases. Because determinative facts vary, the process of decision is not, and cannot be, a matter of mere mechanics. Judgment and skill are needed to adapt the applicable rule to a given case. Certainty is attainable in large degree by strict adherence to established rules of decision. We may avoid uncertainty by adhering to the statute and our prior construction of it.

"Where the call is for individuality in product of the legal mill, we resort to standards. And the sacrifice of certainty in so doing is more apparent than actual. For the certainty attained by mechanical application of fixed rules to human conduct has always been illusory." Pound, "An Introduction to the Philosophy of Law," pp. 142-143.

(c) The plain language of the statute in effect prohibits the court—a caution born perhaps out of experience and to guard against what is being done in the instant case—from engrafting on the statutory test of liability, namely, the common activities of the third party and the injured employe's employer, any additional tests, which of course includes that of the common activity of the employes of the parties mentioned. The language of the statute, omitting parts not here material, is that an employe shall have a cause of action for personal injuries against the third party *"only* where the *employer* liable for compensation and the *other party* * * * legally liable for damages * * * were engaged * * * (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes * * * *and not otherwise."* (Italics supplied.) Whether or not we like it, the statutory rule is the one which it is our duty to administer. We have no right to change it in any way. "Judicial erosion of a statute * * * is as much forbidden as outright judicial disobedience. Evasion, under the guise of construction, is barred." Scott v. Prudential Ins. Co. 207 Minn. 131, 134, 290 N. W. 431, 433.

The intention and meaning of the legislature should be determined primarily from the language of the statute itself. Resort to conjecture is not permissible. Where, as here, the words of the act are plain and the legislative purpose manifest, it is not permissible to seek a hidden meaning at variance with the language used and to engraft such meaning on the statute. Such construction leads to amendment of the statute rather than ascertainment of the legislative intent. Mellen Lbr. Co. v. Industrial Comm. 154 Wis. 114, 142 N. W. 187, L. R. A. 1916A, 374, Ann. Cas. 1915B, 997. The legitimate scope of statutory construction being limited to ascertainment of legislative intent, judicial addition to a statute under the guise of construction transcends judicial power and trenches on that of the legislature.

"It is not, however, in the power of courts to avoid legislation because it may seem drastic or inexpedient. It is not their function to supervise what the legislature sees fit to do, or to enforce

only such session laws as appear to be wise. It is not within their power to alter them because of hardship involved in their application to particular circumstances. When the legislature has the constitutional power to enact a given law, and it properly frames an act clearly expressing a legal intent, it is the duty of the courts to construe that act so as to effectuate it. The argument based on the inconvenience of the result is then out of place." State v. Rat Portage Lbr. Co. 106 Minn. 1, 5, 115 N. W. 162, 164, 117 N. W. 922.

A court is not justified in overhauling a statute into a form which it may think best for all concerned. State ex rel. Murane v. Jack, 52 Wyo. 173, 70 P. (2d) 888, 71 P. (2d) 917, 112 A. L. R. 161; II Lewis' Sutherland, Stat. Const. (2 ed.) pp. 699-700.

(d) The purpose of the statute was not merely to restore to injured employes the right of action against third parties. If that was all that was intended, it is reasonable to assume that the restoration would have been made without the qualifications enumerated in the statute. The legislature was also dealing with the liabilities of third parties subject to the act. We cannot say that that question is of such unimportance as not to deserve legislative consideration. The legislature chose to deal with the matter not exclusively in terms of an injured employe's right of action or in terms of the third party's liability, but in both.

The history of the act shows that in its original form it divided third parties roughly into those subject and those not subject to the act. In cases of negligence, the former were liable only to the same extent and in the same way as the injured employe's employer; the latter were liable under the general law. Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412. Subsequent amendments made third parties subject to the act liable under the general law, except where the third party and the injured employe's employer were engaged in common activities mentioned therein. The legislative purpose was both to restore in part an injured employe's right of action against third parties and to enlarge in part the third party's liability to

injured employes; but that purpose was strictly limited by the terms of the statute *only* to the cases mentioned therein *and not otherwise.* The fact that the statute is unique to this state has been no obstacle to ascertaining its real purpose. Uotila v. Oliver I. Min. Co. 165 Minn. 475, 206 N. W. 937. In Rasmussen v. George Benz & Sons, 168 Minn. 319, 325, 210 N. W. 75, 77, 212 N. W. 20, decided in 1926, we said:

"All the parties were under the compensation law. Had Rasmussen received the same injury without the negligence of defendant he would have received an award from the Industrial Commission against his employer. Defendant meets the requirements of the act toward its own employes. This employe of the ice company had, prior to the 1923 law, the option to pursue the employer or the third party, but not both. The change in the law evidences the fact that the legislature concluded that if the third party bore a certain relation to the employer, and was itself under the compensation act, then the employe should be confined to his remedy under the compensation act. From a civic, economical and sociological point of view this position is sound. This reasoning rests upon the fact that the employe should get from the third party the same award that he would get from his own employer if it alone were responsible for the acts proximately causing his injury. Being engaged in a 'common enterprise' or in the 'accomplishment of the same' or 'related purposes' in operation on the premises puts all the employers so engaged in the relative, if not actual, position of an employer of any such employe. The third party being guilty of actual negligence, which is essential to its liability, should carry the burden in preference to the employer but the community of interest in accomplishment and purpose should under such circumstances, protect the third party from a greater award than would be imposed upon the employer; and the employe, under such conditions, should not be required to take less than the award which would come to him if the responsibility rested with his employer. In short the community of interest gives the third

party, who is subject to the compensation act, under this statute the status of an employer toward the employe. The argument that the employe cannot be deprived of his common law action is sufficiently answered by the case of Mathison v. M. St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412. We hold that plaintiff's exclusive remedy is under the compensation act."

We have never had any doubt concerning that purpose, although some other reasons for the act were suggested in Smith v. Kedney Warehouse Co. Inc. 197 Minn. 558, 267 N. W. 478, 269 N. W. 633.

(e) Mason St. 1927, § 4291, was uniformly construed, as I have indicated, from the time of its enactment until its repeal in 1937, when, coincident with its repeal, the legislature reënacted it as L. 1937, c. 64, § 5. The reënacted section appears in Minn. St. 1941 as § 176.06, and in Mason St. 1940 Supp. as § 4272-5. Absent other manifestation of legislative intention, the reënactment of a statute after its construction by this court adopts the prior judicial construction as part of the new statute. Christgau v. Woodlawn Cemetery Assn. 208 Minn. 263, 273, 293 N. W. 619. Cf. Enger v. Holm, 213 Minn. 154, 164, 6 N. W. (2d) 101, 105. The legislature by statute has adopted this rule of construction for ascertaining its intent. L. 1941, c. 492, § 17(4), reads:

"When a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language."

We cannot repudiate the prior construction of the act in question from the date of its original enactment to the time of its repeal and reënactment without setting at naught the adoption by the legislature of such construction of the act as part of the new statute. That alone is an insuperable obstacle to overruling our prior decisions construing the act. If defendant here was not liable under the rule of Olson v. Thiede, 177 Minn. 410, 225 N. W. 391, as we there construed the act, the court has no power now to overrule that decision by holding to the contrary. The rule of that case is part of the present statute and governs the instant case.

(f) Finally, the answer, if one is needed, to the argument that the construction adopted by the court is necessary to avoid unconstitutionality is found in our decisions in Mathison v. Minneapolis. St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412, and Rasmussen v. George Benz & Sons, 168 Minn. 319, 210 N. W. 75, 212 N. W. 20, where we held that denial to an injured employe of all right of action under the general law against a third party subject to the act, except that of recovering damages equivalent to workmen's compensation, violated no constitutional rights of an employe. The enlargement of that right of action by amendments of the act certainly cannot be less constitutional.

### CONCLUSION

I object to any change of the act in question by judicial construction, not because I think that the legislature has adopted the best or wisest rule, or even that the one it has adopted is better or wiser than that announced by the majority of the court, but because it is for the legislature in any event to adopt whatever rule it may choose. It is not for the courts to amend a statute by construction. Arneson v. W. H. Barber Co. 210 Minn. 42, 297 N. W. 335; Rice v. City of St. Paul, 208 Minn. 509, 295 N. W. 529.

At the time of plaintiff's injuries, in August 1940, the test for determining liability was, as the statute provides, the common activities of the third party and the injured employe's employer. It is not seriously disputed that under the rule (applied just previously in June 1940 in Smith v. Ostrov, 208 Minn. 77, 292 N. W. 745, and subsequently in November 1942, in the Gentle case, 213 Minn. 231, 6 N. W. [2d] 361, *supra*) defendant and Boote, plaintiff's employer, were engaged in a common enterprise in repairing Boote's building, and that defendant is not liable. Defendant is held liable only by changing the rule, applicable when liability attached, by engrafting on the statute and its prior construction a further test of liability, *viz.*, the common activities of the *employes* involved. Under the rule, thus changed, defendant is held liable upon the ground that plaintiff, one of Boote's em-

ployes, was not engaged in a common activity with defendant's employes in repairing the building. The change of rule in the instant case is unjust to defendant. It is discriminatory as denying to him the benefit of the applicable rule, accorded to others when his liability attached, of having his liability determined by his and the employer's common activities. So far as he is concerned, the change of rule governing his case has the same operation and effect as an *ex post facto* law.

Therefore I think that there should be an affirmance.

YOUNGDAHL, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Peterson.

[1]Reported in 8 N. W. (2d) 800.