**Perry SORENSON, et al., Respondents,**

v.

**Earl VISSER d/b/a Visser Trenching, Defendant and Third–Party Plaintiff, Appellant,**

v.

**Gunderson Electric, Third-party defendant.**

No. C1–96–930.

Court of Appeals of Minnesota.

Feb. 11, 1997.

Richard P. Mahoney, Victor E. Lund, Mahoney, Dougherty and Mahoney, P.A., Minneapolis, Kenneth F. Johannson, Johannson, Taylor, Rust, Tye & Fagerlund, P.A., Crookston, for Appellant.

Kim E. Brust, Conmy, Feste, Bossart, Hubbard & Corwin, Ltd., Fargo, for Respondents.

Considered and decided by KLAPHAKE, P.J., and SCHUMACHER and FOLEY, *JJ.

## OPINION

KLAPHAKE, Judge.

Earl Visser, d/b/a Visser Trenching (Visser), appeals from judgment in favor of respondent Perry Sorenson. Sorenson, an electrician employed by third-party defendant Gunderson Electric, was injured during an excavating project. Visser contends that the trial court lacked subject matter jurisdiction over Sorenson's claims. He argues that Sorenson's sole remedy was under the Workers' Compensation Act (the Act), Minn.Stat. § 176.061 (1994), because Visser and Gunderson were engaged in a common enterprise. Visser also challenges the jury's future damages award for loss of earning capacity and medical expenses and claims errors in the admission of evidence. We affirm.

## FACTS

Jerry Hanson hired Gunderson Electric to locate an old well on his property by following a water pipeline to the well. When Gunderson Electric was unable to locate the water line with its trenching machine, it contacted Visser to assist with the project. On the afternoon of October 10, 1989, Visser sent his son, Bruce Visser, to dig a trench with a backhoe.

By mutual consent, Bruce Visser dug the trench and determined its width, depth, and slope, while Gunderson Electric employee Sorenson stood in the trench, uncovered the water line by hand, and pointed out the direction that Bruce Visser should dig. Bruce Visser placed dirt he had excavated to create the trench within a foot of the south wall. Sorenson was injured when a large chunk of clay broke from the south side of the trench and rolled onto him, pinning him to the north side of the trench and breaking his wrist.

Sorenson initiated this negligence action against Visser, and Visser initiated a third-party claim against Gunderson Electric. Vis-

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

ser and Gunderson Electric settled the third-party action prior to trial, signing a $23,-525.95 reverse *Naig* release for workers' compensation benefits paid to date and any benefits payable in the future.

At trial, witnesses included those who were present at the Hanson farm on the date of the accident, Sorenson's physician, a trenching expert, an occupational therapist, and a vocational rehabilitation consultant. The jury returned a special verdict finding Visser and Bruce Visser each fifty percent negligent and Gunderson Electric and Sorenson not negligent. For "[p]ermanent injury, pain, disability, disfigurement, embarrassment, and emotional distress," the jury awarded Sorenson $50,000 to the date of trial. The jury also awarded Sorenson $216,000 in future damages, including $16,000 in future loss of earning capacity and future medical treatment. The jury further awarded Sorenson's spouse $10,000 for "loss of her husband's services and companionship" to the date of trial.

The trial court denied Visser's posttrial motion for judgment notwithstanding the verdict (JNOV) or a new trial. Visser brought a second motion for posttrial relief, requesting that the court correct the judgment to delete future damages and determine collateral sources or, alternatively, grant a new trial or JNOV on the theory of common enterprise. Visser, however, filed its notice of appeal before the trial court had an opportunity to rule on this second posttrial motion.

## ISSUES

I. Did the trial court lack subject matter jurisdiction to decide this case because Sorenson's sole remedy was for workers' compensation benefits?

II. Did the trial court err in allowing the jury to award damages for future loss of earning capacity and future medical expenses?

III. Did the trial court abuse its discretion in admitting evidence?

## ANALYSIS

### I.

■ Visser claims that Sorenson's sole remedy was for workers' compensation benefits and that the trial court thus lacked subject matter jurisdiction to decide Sorenson's claims. *See* Minn.Stat. § 176.031 (1994) (action for workers' compensation benefits exclusive remedy for injured employee where employer covered under Act).[1]

Under the election of remedies provision of the Act, if the employer is liable for benefits and an insured or self-insured third party is potentially liable for damages, the employee must elect to proceed against the third party for damages or against the employer for workers' compensation benefits, "but not against both." *Id.* § 176.061, subd. 1. This provision applies only if the employer and the third party are engaged in "furtherance of a common enterprise." *Id.*, subd. 4.

■ Courts apply a three-part test to determine whether a common enterprise exists:

(1) The employers must be engaged on the same project;

(2) The employees must be *working together* (common activity); and

(3) In such fashion that they are subject to the same or similar hazards.

*McCourtie v. United States Steel Corp.*, 253 Minn. 501, 506, 93 N.W.2d 552, 556 (1958). Here, the first factor was met because the employers were engaged in the same project—to locate Hanson's well.

To apply the second factor, "working together," the employees' activities must constitute more than merely working toward a common goal—the activities must be "interdependent" and not "overlap[ping] minimally." *See Schleicher v. Lunda Constr. Co.*,

---

1. The parties also dispute whether the workers' compensation coverage issue was a defense that should have been pleaded separately or waived, or was jurisdictional and could be raised at any time. District courts are without subject matter jurisdiction if the employee's exclusive remedy is under the Act. *See McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 833 (Minn. 1995). Thus, the question was jurisdictional and could be raised at any time in the proceedings. *See* Minn. R. Civ. P. 12.08(c) (court must dismiss case if it lacks subject matter jurisdiction "[w]henever" issue arises "by suggestion of the parties or otherwise").

406 N.W.2d 311, 312 (Minn.1987). The difference in the employees' functions and interdependence of their duties are important aspects of this factor. *See O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 896 (Minn.1996). While Sorenson, as the electrician, and Bruce Visser, as the trench digger, had distinctly different functions, their duties were interdependent. Without the efforts of the other, they would not have been able to proceed with locating the well. Thus, the second factor was also met. *See id.*, 549 N.W.2d at 896 (employees engaged in common activity where they worked in same work space and necessarily coordinated their work).

Nevertheless, because the third factor, "same or similar hazards," was not met, no common enterprise existed in this case. While standing in the trench, Sorenson was subject to the hazard of trench cave-ins, as well as other possible injuries relating to his physical presence in the trench. Bruce Visser was not subject to any of these hazards while operating the backhoe. Thus, Visser and Gunderson Electric were engaged in separate enterprises and Sorenson was not precluded from bringing a common law action against Visser by Minn.Stat. § 176.061, subd. 1. *See Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 906 (Minn.1984) (no common enterprise found where firefighters performed different functions and encountered greater risks than NSP personnel in fighting gas fire); *cf. Ritter v. M.A. Mortenson Co.*, 352 N.W.2d 110, 113 (Minn.App.1984) (steel worker and crane operator involved in common enterprise where crews were intermingled and crew members were subject to same or similar hazards, including "falling beams, electrical shock, [or] injury from the crane").[2]

## II.

Visser claims that the trial court erred by submitting the jury the issues of future loss of earning capacity and future medical expenses because those items were covered in workers' compensation benefits Sorenson received from Gunderson Electric. Visser argues that Sorenson had only a subrogation claim for those damages and that because Gunderson Electric settled its claim for those damages in the reverse *Naig* settlement and assigned its subrogation claim to Visser, Sorenson cannot claim the damages in this action against Visser.

Visser raised this issue for the first time in its second posttrial motion. Visser did not object at trial to the jury instructions or the special verdict form that included these items. Because Visser's second posttrial motion was pending when this appeal was filed, the trial court had no opportunity to rule on the issue.

A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it.

*Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quoting *Thayer v. American Fin. Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn. 1982)). Because the trial court was not given the opportunity to decide the issue, this court declines to do so.

## III.

Visser contends that the trial court erred in admitting the testimony of trenching expert Arnold Kraft, occupational therapist Patricia Lucas, and vocational rehabilitation specialist Glen Weiand.[3]

The question of whether to admit or exclude evidence rests within the broad discretion of the trial court and its ruling will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion. Entitlement to a new trial on the grounds of improper evidentia-

---

**2.** It is also doubtful whether the Act would apply to Visser, a sole proprietor. *See* Minn.Stat. § 176.041, subd. 1(d) (1994) (Act does not apply to "sole proprietor"). Visser argues that he was self-insured and would be covered under the Act because he relied on his own financial reserves to compensate any claims that would arise. To constitute a "self-insured" employer under the Act, however, an employer must file a $1,000 application fee, "show financial ability to pay * * * compensation," and receive a written order of the Commissioner of Commerce exempting it from insuring liability. *Id.* at 176.181, subds. 2 & 2a (1994). Visser thus does not meet the definition of a self-insured employer, and any self-insurance provided by Visser did not include claims for workers' compensation benefits.

**3.** The evidentiary issues are properly before this court because they were raised in Visser's first posttrial motion and were ruled upon by the trial court in denying that motion.

ry rulings rests upon the complaining party's ability to demonstrate prejudicial error.

*Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990) (citations omitted).

### Arnold Kraft's Testimony

■ Visser contends that the trial court should not have allowed Kraft to testify on the required slope of the trench and the competency of Bruce Visser to dig trenches based on 1995 OSHA standards and regulations. Based on our review of the record, this characterization of Kraft's testimony is inaccurate. The current OSHA standards and regulations relied on by Kraft are substantially identical with those existing in 1989. In addition, Kraft based his opinion that the slope of the trench was insufficient on several factors, including the type of soil in the surrounding area, previous excavation of the area, and the depth and width of the trench. And Kraft's testimony that Bruce Visser was not qualified to determine the proper slope, depth, and width of the trench was supported by Bruce Visser's own testimony that although he had practical experience gleaned from his years working with his father, he had little or no formal training in trench digging. Under these circumstances, the trial court did not abuse its discretion in allowing Kraft to testify as he did.

### Patricia Lucas and Glen Weiand Testimony

■ Visser claims that Lucas was allowed to testify that Sorenson "would not be able to return to his job as an electrician," and that Weiand was allowed to testify that "he could identify no suitable occupation that Sorenson could do * * * that would pay as much as he was making as an electrician." The trial transcript, however, demonstrates that the testimony of these individuals was much more limited than stated by Visser. Lucas testified that based on her functional assessment, Sorenson was capable of a light to medium level of work under U.S. Department of Labor guidelines and that the job of electrician was rated higher than that level. And Weiand testified as to other jobs for which Sorenson would be qualified, based on his work experience and education. Again, under these circumstances, the trial court's admission of testimony by Lucas and Weiand was not an abuse of discretion.

### DECISION

The trial court properly exercised subject matter jurisdiction over Sorenson's common law action and declined to grant Visser's alternative motion for JNOV or a new trial. The trial court did not abuse its discretion in admitting evidence of a trenching expert, an occupational therapist, and a vocational rehabilitation specialist. This court declines to address whether the trial court erred in submitting to the jury damages issues of future loss of earning capacity and future medical expenses because that issue was not considered or decided by the trial court.

**Affirmed.**