*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2019**

Chad Schirmers,
Respondent,

vs.

County of Anoka,
Appellant.

**Filed July 20, 2015
Reversed
Halbrooks, Judge**

Anoka County District Court
File No. 02-CV-13-1273

Gary L. Manka, Katz & Manka, Ltd., Minneapolis, Minnesota; and

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, Minnesota (for respondent)

Jon K. Iverson, Stephanie A. Angolkar, Iverson Reuvers Condon, Bloomington, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Schellhas, Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**HALBROOKS**, Judge

On appeal from the denial of its motion for summary judgment, appellant county argues that there are no genuine issues of material fact and that under the common-

enterprise doctrine, respondent is precluded from bringing a negligence claim against the county after receiving workers' compensation benefits from his employer's insurer. We reverse.

## FACTS

Respondent Lino Lakes police officer Chad Schirmers was injured by an accidental bullet ricochet in a training exercise held at the Anoka County Firearms Range, which is operated by appellant Anoka County on behalf of the Anoka County Joint Law Enforcement Council. The council was formed over 30 years ago when members entered into a joint-powers agreement. It is undisputed that Schirmers received workers' compensation benefits through his employer, the City of Lino Lakes, which is a member of the council. At issue is whether Schirmers's work-related injuries occurred while the county and city were engaged in a "common enterprise," which would preclude Schirmers's damages claim against the county under the Minnesota Workers' Compensation Act (the Act).

During the afternoon of May 5, 2011, Schirmers and two fellow Lino Lakes police officers participated in a rifle and handgun training exercise. A fourth Lino Lakes police officer served as the firearms instructor and was directly responsible for the exercise while it was underway. A retired sheriff's deputy employed by Anoka County served as the on-site range master. The parties dispute certain aspects of the range master's duties, but they agree that he (1) admitted the city employees to the firearms range, which is generally open only to employees of council members, (2) remained on-site for the entire exercise, and (3) reviewed the training plan with the city's firearms instructor before the

2

exercise began. The range master testified that he periodically walked behind the range lanes to observe the exercise in progress. The firearms instructor asserts in his affidavit that he did not observe the range master doing so, that he does not recall him being present, and that the typical duties of the on-site range master are unrelated to training exercises.[1]

Two and one-half hours into the training exercise, while on the five-yard line completing a "figure 8" exercise in which officers walked around posts before firing on command, a bullet fired by one of the three officers' handguns struck a hardened object, ricocheted back, and hit Schirmers in the abdomen, injuring him.[2] Schirmers underwent surgery, recovered, and returned to full-duty work by August. The essence of Schirmers's complaint against the county is that the county created dangerous conditions at the firearms range that caused his injuries.

The county moved to dismiss the complaint under Minn. R. Civ. P. 12.02(e) in part on the ground that Schirmers's claims are barred by the common-enterprise doctrine. The district court denied the motion, reasoning that the county had not established that Schirmers "was subject to the same or similar hazards as [county] employees." After completion of discovery, the county moved for summary judgment under Minn. R. Civ. P. 56.03, again arguing that Schirmers's claims are barred by the common-enterprise

---

[1] Only Schirmers and the range master were deposed.

[2] The Bureau of Criminal Apprehension (BCA) investigated and determined that all three handguns were functioning properly. The BCA was unable to match the bullet to a specific firearm barrel.

doctrine. The district court denied this motion as well, determining that genuine issues of material fact remain. This interlocutory appeal followed.

## D E C I S I O N

"Generally, an order denying a motion for summary judgment is not appealable . . . ." *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 832 (Minn. 1995). But because the county's appeal raises a legal issue about the application of the common-enterprise doctrine that could divest the district court of jurisdiction, we accepted jurisdiction over the appeal.

On appeal from the denial of a motion for summary judgment, we review "whether there are any genuine issues of material fact and whether the district court erred in its application of the law." *Lishinski v. City of Duluth*, 634 N.W.2d 456, 458 (Minn. App. 2001), *review denied* (Minn. Jan. 15, 2002). "[A] denial of summary judgment is reviewed de novo." *Martin v. Spirit Mountain Recreation Area Auth.*, 566 N.W.2d 719, 720 (Minn. 1997). Appellate courts view the evidence in the light most favorable to the non-moving party. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). "[T]he party resisting summary judgment must do more than rest on mere averments." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997).

Summary judgment is appropriate when the common-enterprise doctrine applies, and the election of workers' compensation benefits from the employer precludes a negligence action against a third party for damages. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 897 (Minn. 1996). "Whether a common enterprise existed is a legal

question that we review de novo." *LeDoux v. M.A. Mortenson Co.*, 835 N.W.2d 20, 22 (Minn. App. 2013).

Under the Act, when the employer and a third party are engaged in "furtherance of a common enterprise," an injured employee must choose between receiving workers' compensation benefits through his employer or seeking damages in a common-law negligence action against the third party. Minn. Stat. § 176.061, subds. 1, 4 (2014); *O'Malley*, 549 N.W.2d at 897. A common enterprise exists when "the masters have joined forces and in effect have put the servants into a common pool." *Gleason v. Geary*, 214 Minn. 499, 511, 8 N.W.2d 808, 814 (1943).

The common-enterprise doctrine bars a damages claim based on the negligence of a third party's employee when three factors are satisfied: "(1) The employers must be engaged on the same project; (2) The employees must be [w]orking together (common activity); and (3) In such fashion that they are subject to the same or similar hazards." *McCourtie v. U.S. Steel Corp.*, 253 Minn. 501, 506, 93 N.W.2d 552, 556 (1958). We address each factor in turn.

*Common Project*

The first *McCourtie* factor requires that the two employers are working on a common project. *O'Malley*, 549 N.W.2d at 895, 897. The district court here made no express determination on this factor, but its satisfaction is undisputed on appeal. The common project here could be the use of the firearms range for firearms training. The county submitted affidavits describing the use and support of the firearms range by council members, including regularly scheduled county-wide training exercises and an

5

annual "range clean-up" day. Another characterization of the common project could be the broader law-enforcement collaboration contemplated by the joint-powers agreement, including emergency dispatch functions, a records-management system, and the firearms range. Schirmers does not dispute the mechanics of the joint-powers agreement, the purpose of the council, or that he used the range on May 5 as a function of his employer's membership in the council. Whether the common project is defined narrowly as the use of the firearms range or more broadly as the council's law-enforcement collaboration in pursuit of economies of scale, we conclude that the record supports a conclusion that the county and the city were engaged in a common project.

*Common Activity*

We next consider whether the May 5 training exercise was a common activity. To be engaged in a "common activity" or "working together," the employees of the two employers must do more than merely work together toward a common goal; their activities must be "interdependent" and not "overlapping minimally." *Id.* at 895. The test focuses on the workers' activities, not the employers' goals. *Id.*

The *Gleason* decision explains that application of the common-enterprise doctrine is proper when "the work[ers] so employed should stand in the same relation to each other and to their employers as if they were working for a common employer." *Gleason*, 214 Minn. at 509, 8 N.W.2d at 813. Consistent with this reasoning, our caselaw provides that there is no common activity when different employee groups work on the same construction project but in different areas and when it is never contemplated that the employees would work together. *See McCourtie*, 253 Minn. at 512, 93 N.W.2d at 560

6

(concluding that because the steel workers would first have to set the structure before the plumbers could install the plumbing they were not "working together"). Nor is there a common activity when two groups engage in simultaneous tasks near each other but do not interact with or assist each other. *See LeDoux*, 835 N.W.2d at 23 ("Working in the same area at the same time does not alone establish an interdependent common activity . . . .").

But when two employee groups work in close proximity and regularly coordinate their work, a common activity exists. *See O'Malley*, 549 N.W.2d at 895-96; *Alberts v. United Stockyards Corp.*, 413 N.W.2d 628, 630 (Minn. App. 1987); *Higgins v. Nw. Bell Telephone Co.*, 400 N.W.2d 192, 194 (Minn. App. 1987), *review denied* (Minn. Mar. 25, 1987). The two employee groups need not fulfill the same functions. *See Sorenson v. Visser*, 558 N.W.2d 773, 776 (Minn. App. 1997) (concluding that employees who had "distinctly different functions" were engaged in a common activity when "their duties were interdependent" in accomplishing their work). A longstanding, close relationship between the two employers can inform a determination of whether their employees worked interdependently. *See Alberts*, 413 N.W.2d at 630; *Higgins*, 400 N.W.2d at 194.

Schirmers contends that the city's employees functioned independently of the county on May 5 and that the range master "merely opened the door," much like an employee accepting delivery of supplies from a third party. *See Schleicher v. Lunda Constr. Co.*, 406 N.W.2d 311, 314 (Minn. 1987). In support of this contention, Schirmers relies on his firearms instructor's affidavit, in which the instructor asserts that he had complete responsibility for the training exercise. But the instructor acknowledges

7

that, before beginning the training session, he informed the range master that the planned exercise was a "simple qualification shoot" that would incorporate movement and explained "the manner in which this movement would be performed, i.e., that a weapon would not be drawn until the shooter was facing down range and the weapon would be pointed down range at all times." Schirmers does not explain why the city's firearms instructor would share his safety plan with the county's "doorman." The only logical conclusion that can be drawn from the instructor's description is that the range master had some oversight over the exercise.

The instructor's description of his conversation with the range master is consistent with the range master's own recollection.

> On May 5, 2011 I reviewed the "figure 8" exercise proposed by Lino Lakes Police Department. In reviewing the proposed training exercise I had some concerns and I spoke with . . . [the firearms instructor] regarding those concerns. [The instructor] [assured] me officers would not fire until he whistled and they were directed to stop and turn and then fire. After speaking with [the instructor] I approved the training proposal.

The range master testified in his deposition that his specific concern was that "an officer would become over-anxious and draw his weapon before he had completed and made a turn towards his target." The range master also testified that he had the authority to veto the training exercise, which the firearms instructor does not explicitly deny.

The firearms instructor's affidavit also provides that he did not "recall" or "observe" the range master "present in the area where the firing was taking place." But these assertions do not directly contradict the range master's account that

8

> [w]hile Lino Lakes Police Officers were using the course I would periodically walk out and inspect the course. I would stand behind officers on the grounds immediately behind the range lanes where they could obviously see me while they continued to conduct their training exercise. While on the grounds immediately behind the range lanes I was within the area of the range where officers were training.

In his deposition, the range master testified that he left the range house and observed the training exercise every 20 to 30 minutes. While the firearms instructor's assertion that he did not observe the range master in the area behind him during the exercise may cast some doubt on the range master's account, a "metaphysical doubt as to a factual issue will not defeat a summary judgment motion." *See DLH*, 566 N.W.2d at 71 (quotation omitted).

The only other evidence in the record about the range master's role and presence throughout the afternoon is Schirmers's own affidavit, in which he asserts that the range master was not "present in any area where the firing was taking place." This assertion alone cannot raise a genuine issue of material fact sufficient to defeat summary judgment. *See Risdall v. Brown-Wilbert, Inc.*, 759 N.W.2d 67, 72 (Minn. App. 2009) ("A self-serving affidavit that contradicts other testimony is not sufficient to create a genuine issue of material fact."), *review denied* (Minn. Mar. 17, 2009).

After careful review and viewing disputed facts in the light most favorable to Schirmers, the record demonstrates that the county and city were members of a council that collaborated to provide law-enforcement training. The city used the firearms range on May 5 as a function of its membership in the council. A county employee admitted the city employees to the range. A city employee led the training exercise after reviewing

the training plan with the county employee. The county employee periodically observed the training exercise but was unnoticed by city employees. A city employee immediately notified the county employee of Schirmers's injury.

We conclude based on these facts that the city and county employees were working together in a common activity. The close, long-standing relationship of the city and county here is formalized by a joint-powers agreement. The training at issue took place at a facility operated for council members. The range master and the firearms instructor had distinct but interdependent roles in the qualification shoot. In sum, city and county employees did not work separately and distinctly for the common goal of training their own officers—they each fulfilled necessary functions for the training of the city's officers on the afternoon of May 5. We therefore conclude that the second *McCourtie* factor is satisfied.

*Same or Similar Hazards*

"The third *McCourtie* factor requires that employees be subject to the same or similar hazards for the court to find that a common enterprise existed between the two employers." *O'Malley*, 549 N.W.2d at 896. This requirement "does not demand exposure to identical hazards, only similar hazards." *Olson v. Lyrek*, 582 N.W.2d 582, 584 (Minn. App. 1998), *review denied* (Minn. Oct. 20, 1998). In evaluating whether different employee groups are exposed to similar hazards, "we make a comparison of the general risks to which workers are exposed as a result of the tasks being performed." *Id.*

In *O'Malley*, *Higgins*, and *Alberts*, the supreme court and this court determined that different employee groups faced similar hazards although they were not shoulder to

10

shoulder at the moment of injury. In *O'Malley*, the supreme court determined that the hazards faced by excavator operators were "sufficiently similar" to those of the dump-truck drivers who hauled away the excavated material. 549 N.W.2d at 890-91, 897. In *Alberts*, because any worker could have been injured by livestock or exposure to the same physical conditions, we concluded that "although employees from each group may not perform their duties simultaneously, they work in close physical proximity and are subject to almost identical work hazards." 413 N.W.2d at 630. And in *Higgins*, we noted that all employees were generally susceptible to injuries caused by hazardous conditions in a washroom near the work area and the work area generally, and thus, the two groups faced similar hazards under the third *McCourtie* factor. 400 N.W.2d at 194-95.

Here, the district court characterized the hazard as "the risk of defendant's personnel being struck by a ricochet." But caselaw directs us to compare the "general risks" to which the employees are exposed as a result of performing their duties and that comparison is not limited to the exact risk that caused the injury. *See O'Malley*, 549 N.W.2d at 897; *Alberts*, 413 N.W.2d at 630; *Higgins*, 400 N.W.2d at 194-95. We conclude that while the exercise was underway, the city's officers participating in training and the firearms instructor periodically standing behind them were all exposed to the general risk of injury related to the discharge of rifles and handguns.

Based on its narrow characterization of the hazard, the district court ruled that genuine issues of material fact precluded a determination of whether any county employee was exposed to a similar hazard, citing the parties' disagreement about the specific location of the range master throughout the training exercise. But the range

11

master's affidavit and deposition testimony provide that he periodically stepped behind the range lanes to observe the training exercise in progress, the firearms instructor's affidavit does not directly contradict that evidence, and Schirmers's affidavit alone is insufficient to raise genuine issues of material fact as to the range master's presence.[3] "A fact is material if its resolution will affect the outcome of a case." *O'Malley*, 549 N.W.2d at 892. Viewing the evidence in the light most favorable to Schirmers, we conclude that the affidavits he submitted in opposition to the county's summary-judgment motion do not create a genuine issue of material fact precluding a determination of the third *McCourtie* factor.

When the range master was present behind the city employees during training, he too was exposed to the risk of injury related to the discharge of firearms. The risk of injury to the range master was not identical to the risks facing the city's officers. But because a firearm can cause injury from a distance (in contrast with typical hazards addressed in common-enterprise analysis), the hazards faced by the range master are not "fundamentally different." *See Olson*, 582 N.W.2d at 584. We acknowledge that the range master was not present behind the range lanes at the precise moment that Schirmers was injured. But because our focus is on the general risks facing workers at the firearms

---

[3] The firearms instructor also asserts that "at no time during the exercise was [the range master], or any other employee of [the county] in the physical position where they were susceptible to being struck by a ricochet from the firing range and the training exercise being conducted by the Lino Lakes Police Department on that date." We note that speculative conclusions cannot create genuine issues of material fact. *Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn. 1993) ("Mere speculation, without some concrete evidence, is not enough to avoid summary judgment."). Moreover, the general risks at the firearms range are not limited to ricochet.

range, this does not resolve our inquiry. Both county and city employees were exposed to the risk of injury related to the discharge of firearms during the May 5 training exercise. Therefore, we conclude that the third *McCourtie* factor is satisfied.

The context of this case does not fit neatly into Minnesota case law analyzing the common-enterprise doctrine. But applying the relevant factors to the record before us, we conclude that each is satisfied. Based on the record evidence about the manner in which the city and county conduct firearms training, and in particular how it was conducted on May 5, the county and city "have joined forces and in effect have put the servants into a common pool." *Gleason*, 214 Minn. at 511, 8 N.W.2d at 814. The county is therefore entitled to summary judgment.

**Reversed.**

13