## DAVID B. HILL v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

November 7, 1924.

No. 24,163.

**What car steps are within Safety Appliance Act.**

1. The Federal Safety Appliance Act applies to sill steps on cars, but it does not apply to an ordinary platform step on a passenger car.

**Whether appliance is within act, for the court—whether it complies with the act, for the jury.**

2. Whether an appliance, within the act, complies with the act is a question for the jury; but the question of whether the appliance is within the purview of the act, is purely judicial.

**Proper to direct verdict for defendant.**

3. Record examined and *held* that the evidence is insufficient to sustain a verdict based on common law liability and a verdict was properly directed.

Action in the district court for St. Louis county to recover $50,000. The case was tried before Fesler, J., who at the close of the testimony granted defendant's motion for a directed verdict. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Barton & Kamuchey,* for appellant.

*Fryberger, Fulton, Hoshour & Ziesmer* and *John E. Palmer,* for respondent.

WILSON, C. J.

Plaintiff was employed by defendant as a brakeman on an interstate passenger train operated between Duluth and Brooten via Superior, Wisconsin. At Superior, January 30, 1923, the train was going to back away from the depot and it was plaintiff's duty to

[1]Reported in 200 N. W. 485.

be at the rear end of the train and watch street crossings which the train had to pass over. Plaintiff walked to the first street crossing and gave a backup signal and the train started. As it came to him he undertook to get on, using the steps of the rear end of the rear coach, and fell and was run over. As a result thereof, he lost his left leg above the knee.

Plaintiff claims the lower step was defective and that by reason thereof he suffered his injuries.

The trial court directed a verdict in favor of defendant and plaintiff has now appealed from an order denying his motion for a new trial.

Does this case come within the Federal Safety Appliance Act? We answer this inquiry in the negative. The claim that it does come under this act is because of the language: "All cars must be equipped with secure sill steps." Section 2 Amendment of 1910 (36 St. 298) c. 160. Section 3 of the 1910 Act provides that the Interstate Commerce Commission shall, after hearing, designate the number, dimensions, location and manner of application of the appliances provided for by section 2 of the 1910 Act and section 4 of the Act of March 2, 1893. The commission did this in their order dated March 13, 1911, superseding a prior order on this subject. See Richey's Federal Employers Liability, Safety Appliance, and Hours of Service Acts (2d ed.) p. 664. Among other things it specifies:

## BOX AND OTHER HOUSE CARS
### SILL STEPS

**Number.**—Four (4).

**Dimensions.**—Minimum cross-sectional area one-half ($\frac{1}{2}$) by one and one-half ($1\frac{1}{2}$) inches, or equivalent, of wrought iron or steel. Minimum length of tread, ten (10), preferably twelve (12) inches. Minimum clear depth, eight (8) inches.

**Location.**—One (1) near each end on each side of car, so that there shall be not more than eighteen (18) inches from end of car to center of tread of sill-step. Outside of tread of step shall be not more than four (4) inches inside of face of side of car, preferably flush with side of car. Tread shall be not more than twenty-

four (24), preferably not more than twenty-two (22) inches above the top of rail.

**Manner of Application.**—Sill-steps exceeding twenty-one (21) inches in depth shall have an additional tread. Sill-steps shall be securely fastened with not less than one-half ($\frac{1}{2}$) inch bolts with nuts outside (when possible) and riveted over, or with not less than one-half ($\frac{1}{2}$) inch rivets.

The same order says in reference to hopper cars, high side gondola cars with fixed ends, drop end high side gondola cars, fixed end low side gondola cars, low side hopper cars, flat cars, tank cars with side platforms, tank cars without side sills, tank cars with short side sills and end platforms, and caboose cars without platforms that the sill step shall be the same as specified for "box and other house cars." The order provides for sill steps for passenger train cars without end platforms. It does not provide for sill steps for passenger cars with platform. In fact passenger coaches that carry passengers are not equipped with sill steps and there is no occasion or necessity for such equipment being put thereon. They are attached to mail cars, express and baggage cars used in passenger trains, but such cars have no platform. The sill step is a strip of iron in the nature of a stirrup. The Car Builders Encyclopedia of American Railway Association defines it as "U-shaped iron attached to the sill of a car as a step for train men."

The defective step in question is not a sill step and is in no way attached to a sill. It is a part of a tread in a ledge consisting of risers and treads, and, being a passenger car step, is ordinarily termed a platform step and is sometimes known as a box step. Platform steps, including the ones in question, are a part of the stairs at each end of a passenger coach or caboose car which afford the means of ingress and egress. The sill of a car is one of the main longitudinal timbers which are connected transversely by the end sills, bolsters and cross ties. Sills are divided into side sills, intermediate sills and center sills. The end sill is the transverse member of the under frame of a car framed across the ends of all the longitudinal sills. In passenger cars the end sill comes directly under the end door, the platform with its various parts usually

being a separate construction. The platform end sill is the transverse end piece of the platform frame and is also called the end timber and buffer·beam on passenger equipment cars.

The sill step as used in railway service is a mere step of iron or steel fastened securely to the sill of freight cars and to cars in a passenger train without end platforms. They hang down from the sill of the car and are distinctly different equipment from the passenger steps leading in and out of a passenger coach such as the alleged defective step in this case. A sill step on a passenger coach is absolutely useless. Its absence in the present case had nothing to do with the injury. There is no language in the Safety Appliance Act applicable to the alleged defective step in this case unless the step in question comes within the term "sill step." Apparently the Interstate Commerce Commission in making its order assumed authority to require box steps leading to and from caboose platforms. They made no such provision as to passenger coaches with platforms. Congress might well have included the ordinary steps leading to and from a passenger coach. It did not, and the commission has not extended its apparent assumption to them. Probably Congress considered that such steps were under such constant use by the public, and under such continued observation of railway employes, that it was not necessary to include them within the rigid requirements of the act. The only step the statute mentions is a sill step. The broken step in this case is not a sill step. We are, therefore, brought to the conclusion that the Safety Appliance Act has no application to the present case.

The matter of the distinction between sill steps and other steps was not before the court in McNaney v. Chicago, R. I. & P. Ry. Co. 132 Minn. 391, 157 N. W. 650, and the language used therein including the word "step" must not be construed as inconsistent with the conclusion which we here reach.

Whether an appliance within the act complies with such act is a question for the jury, but the question of whether the appliance is within the purview of the act is purely judicial. People v. Kaufman, 49 Cal. App. 570, 193 Pac. 953. The question as to the meaning of words used in a statute is one of law. City of Boston v.

Boston Elev. Ry. Co. 213 Mass. 407, 100 N. E. 601; Rose v. Franklin Life Ins. Co. 153 Mo. App. 90, 132 S. W. 613; Northern Pac. Ry. Co. v. Finch (D. C.) 225 Fed. 676.

Would the evidence in this case sustain a verdict based upon a common law liability? The plaintiff testified that he took hold of the hand hold, put his foot upon the step and something gave way causing him to go under. The step was of heavy oak wood about one inch thick with a sheet of steel covering it. It also had a heavy steel face fastened on with screws about 1½ or 2 inches long. The tread was about 8 inches wide and of the usual length. About 30 minutes after the accident an inspection showed that the front part of the lower step was freshly broken off. The piece broken off was full length of the step and about 1½ to 2 inches in width and included the metal facing. The part of the tread remaining showed where the screws had been pulled out. The other or disconnected piece was never found. The lower part of the remaining part of the tread showed clearly that violence had been applied by something in the shape of the flat end of a crowbar and the piece pried off. Obviously the break did not come from a man stepping upon the step.

One witness says he looked at the step after the accident and it was in perfect condition. He said after plaintiff was removed from the depot, where he had been taken to wait for the ambulance, he again saw the step and it was broken. There was an opportunity for the step to have been wilfully destroyed, but not by plaintiff. We do not reach the question of the conclusiveness of the testimony of the one witness who said that immediately after the accident the step was not broken.

Plaintiff claims that the break in the wooden step showed a defect which caused the step to break down and that it was of such character that it should have been discovered by proper inspection. Plaintiff's witnesses, who saw this break in the step by the aid of electric lights nearby, say that the wood where broken "was dark, looked like an old piece, was wet; it was full of ice or water." "There was part of it freshly broken and another part looked black where it indicated weakness; the atmosphere had already worked

in." "Black [spots] right on the—where I suppose it had been slightly cracked or partly cracked." "Well, apparently to me it looked new and then the—partly old defect, or one part of an old defect * * * a flaw in the wood * * * dark complected and dirty." After the piece was broken off, the steel plate on the step projected over the broken edge about one inch which would tend to shade the broken wood on night inspection.

Upon the record there can be no doubt but that the broken step is an exhibit in the case. It shows a dark spot at the place indicated in the testimony, but of such character that it could not have caused the break. There is uncontroverted testimony to that effect. It speaks for itself. It is not decayed. The wood is firm, hard and solid. There is absolutely nothing which the most critical inspection could have discovered that would have led to the conclusion that a defect was present. The physical condition of this step could scarcely have been better. The locomotive extended beyond the lines of the steps and any obstruction would necessarily have been removed by it. The step was inspected on the day of the accident at 5:30 a. m., again at 6 a. m., and again at 9:50 a. m. It was inspected by the retiring brakeman at 12:45 p. m. When plaintiff went on duty at about 1 p. m. it was found in good condition on inspection. He opened the platform door shortly before reaching Superior and saw nothing wrong.

The evidence fails to show any omission on the part of the defendant in its inspection and the evidence fails to show any condition, which should have been discovered by proper inspection, that could have led the defendant to have done any reasonable thing which would have avoided the unfortunate injury. The evidence shows proper inspection was made. There is no basis upon which to predicate negligence for failure to inspect. The evidence is not sufficient to make a prima facie case in favor of plaintiff. The character of the accident does not in itself afford evidence of negligence. It does not speak for itself. The plaintiff has failed in his proof to meet the requirements of the settled rules of proof resting upon all plaintiffs in negligence cases.

Such cases must appeal strongly to the wisdom of the law-makers for the inclusion of railway employes in a compensation act. Affirmed.