## IN RE DISBARMENT OF HENRY G. YOUNG.[1]

April 19, 1929.

No. 26,599.

*Patterson & Rorem,* for state board of law examiners.
*Daly & Barnard,* for respondent.

PER CURIAM.

This is a proceeding brought by the state board of law examiners to remove Henry G. Young from his office of an attorney at law of this state. The matter was referred to the Honorable Andrew Grindeland, judge of the fourteenth judicial district, who took and reported the evidence and his findings of fact thereon.

The statute provides that an attorney at law may be removed or suspended "upon a showing that he has knowingly signed a frivolous pleading, or been guilty of any deceit or wilful misconduct in his profession;" also "for a wilful violation of his oath, or of any duty

---

[1]Reported in 225 N. W. 97.

imposed upon an attorney by law." G. S. 1923 (1 Mason, 1927) § 5697. The statute specifies other grounds for disbarment not here material. The oath obligates an attorney to conduct himself "in an upright and courteous manner," "with all good fidelity as well to the court as to the client," and to "use no falsehood or deceit, nor delay any person's cause for lucre or malice." G. S. 1923 (2 Mason, 1927) § 6965.

The record shows several transactions of which we note the following:

*First.* On June 6, 1923, respondent was appointed guardian of Gustave A. Peterson, an incompetent veteran of the World War then in the hospital for the insane at Rochester, Minnesota. As such guardian respondent received from the United States veterans bureau $790.13 at the time of his appointment and $80 per month thereafter. On September 10, 1923, he made an application to the veterans bureau for the reinstatement of Peterson's insurance of $10,000 and sent the sum of $390.21 with the application. From a letter written by the assistant director of the veterans bureau in answer to an inquiry concerning this matter, we quote the following:

"This application was found acceptable under the provisions of section 304 of the World War Veterans Act of 1924, which requires payment of all monthly premiums in arrears, together with interest at the rate of five per centum per annum, compounded annually. An additional remittance of $69.60 was required, and the guardian was so notified. Inasmuch as no reply was received to the various letters written, the amount held in the Bureau was refunded. Treasury check No. 84,748 dated July 14, 1924, for the full amount of $390.21 was mailed to Mr. Henry G. Young at Willmar, Minnesota."

The insurance was not reinstated. Respondent received the check and cashed it July 19, 1924. On August 23, 1924, he filed in the probate court his verified annual account, in which he listed the $390.21 as having been paid to the veterans bureau, but made no mention of the fact that it had been refunded to him. He filed a report with the veterans bureau in which he listed it as having

been returned to him. That bureau had returned it and had a record of that fact.

On July 9, 1923, respondent sent $50 to the hospital at Rochester to be used in making purchases for Peterson if needed. Peterson left the hospital in October, 1923, and in December, 1923, the hospital returned to respondent the $50 together with $2 interest thereon. In his verified annual account of August 23, 1924, respondent credited himself with the $50 paid to the hospital, but omitted to charge himself with the $52 returned.

After a citation and hearing, the probate court, on December 22, 1925, made an order removing respondent as guardian of Gustave A. Peterson, in which order his conduct as such guardian was severely criticized. In February, 1926, respondent filed his verified final account as guardian in which he retained credit for the $390.21 paid to the veterans bureau and the $50 paid to the Rochester hospital but did not charge himself with the repayment of either of those sums. The referee found that the fact that respondent had received those sums was not discovered until the hearing on his final account, and that thereafter he asked permission to and did file an amended account in which they were included. Respondent states that he loaned the $390.21 item to himself with the knowledge and consent of his ward, but that he does not know what he did with the $52 item. He claims that those items were omitted from his verified accounts through inadvertence. The finding that he "failed and neglected to properly account" therefor is fully justified.

*Second.* Respondent was appointed guardian of Gilbert A. Johnson, an incompetent veteran, in January, 1925, and resigned and filed his final account in March, 1926. He had credited himself in the account with expenditures aggregating some $200 which the court disallowed. There is no evidence of any culpable act in connection with this account, and we mention it only because of a letter which, according to the record, respondent wrote to Johnson more than a year later. The letter is too long to quote. It opens with this sentence:

"If I get another letter like the last one from you, you are liable to find yourself out in the Lake Lillian country and not getting one cent a month."

It is filled with abuse and threatens Johnson with a loss of his pension. It closes with this sentence:

"Now, if you don't like this just start something and we'll soon see how much money you have to spend."

The contents of the letter from Johnson are not disclosed; but whatever they may have been no attorney should be guilty of writing such a reply.

*Third.* In March, 1928, Catherine Kuiper, a girl under the age of consent, accused one William Huebner, a married man, of having had carnal intercourse with her. Lammert Kuiper, the girl's father, could talk English only brokenly. He went with Catherine to the Huebner home where they met Mrs. Huebner. She employed respondent, and at her instance Kuiper and his daughter went to respondent's office. A settlement was arranged, respondent saying that it would do Catherine more good to make a settlement than to prosecute Huebner. It appears that the Kuipers had previously seen the county attorney, but they had no attorney in connection with this settlement. Respondent prepared and had Catherine and her father execute an agreement which recites that certain accusations had been made and denied, and in which, for $500 paid in cash and two promissory notes—one for $500 payable one year after date, one for $4,000 payable three years after date—they, "agree not to prosecute the said William Huebner and further agree not to publish said accusations." Respondent prepared two promissory notes on the usual forms—one for $500 due in a year and one for $4,000 due in three years—but erased from each the words "or order" so that they were non-negotiable, and also changed the provision for interest so that they bore no interest until after maturity. He also prepared a chattel mortgage to secure the payment of the $4,000 note, and inserted therein a provision that it was not transferable. Huebner executed the notes and mortgage, and they were delivered to the Kuipers.

Respondent as an attorney of course knew that the contract with the Kuipers was void because based on an agreement not to prosecute for a criminal offense, and knew that the notes given could not be enforced for that reason. They were made non-negotiable and therefore could not pass to a holder in due course. The $4,000 note did not mature until after a prosecution for the criminal offense would be barred by the statute of limitations. The agreement signed by the Kuipers provided evidence to prove the illegality whenever Huebner saw fit to assert it. Yet respondent assured the Kuipers that the notes were all right, and they evidently believed him. Respondent claims that he believed the Kuipers to be blackmailers and that he entered into this transaction to obtain evidence for use in a prosecution for blackmail. No such prosecution was ever started, and the referee finds that the claim of blackmail was not established. It also appears that when the Kuipers discovered that the notes were invalid they brought a civil action against Huebner and recovered a verdict.

The record leaves no doubt that the respondent has been guilty of misconduct in his profession, and it is therefore ordered that judgment be entered suspending him from the practice of the profession of an attorney at law in this state for a period of two years from the date thereof.