## R. W. SMITH v. JENNIE OSTROV.[1]

June 21, 1940.

No. 32,348.

[1]Reported in 292 N. W. 745.

*Durham & Swanson,* for appellant.

*D. A. Bourgin* and *Lewis, Grannis & Underhill,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Plaintiff brought this action to recover damages because of personal injuries sustained by him as the result of an accident occurring on November 3, 1938, in defendant's place of business in the city of Virginia, this state. In his complaint he alleged that defendant, owner of a grocery store, through her agent invited him into the basement of the store on the day of his injury and that while descending the stairs maintained on the premises by defendant, "plaintiff slipped and fell upon and from said stairs" with resultant bodily injury. It was further alleged that plaintiff's fall was proximately caused by the negligence of defendant by reason of the facts that "defendant maintained said stairway in a negligent, careless, improper, and wrongful condition"; that defendant "had said stairway and passageway into said basement improperly lighted"; that defendant "allowed slippery, greasy refuse and vegetable and other matter to accumulate. along said stairway, and upon said stairs, so that said stairway was in a dangerous and improper condition"; that defendant "failed to provide proper railings along said stairway on said premises"; and that defendant "allowed said stairway in said premises to remain in a dangerous, negligent, wrongful, and unlawful condition." The complaint also charged that defendant knew or ought to have known of the foregoing condition of the stairway and that plaintiff did not know and was not informed of the condition. Defendant, by answer, denied negligence on her part, set up the defense of contributory negligence on the part of plaintiff, and alleged that plaintiff, defendant, and plaintiff's employer, Snider Corporation, were "at the time of said accident engaged in due course of business in furtherance of a common enterprise or the accomplishment of same or related purposes in operation on the premises where the injury was

received at the time thereof" and that "plaintiff has elected to receive compensation from the Snider Corporation and its insurer." Issues were joined by a reply denying all the allegations of the answer save that "plaintiff, at the time he received said injury, was in the employment of the Snider Corporation."

The case was tried before court and jury. At the close of testimony both plaintiff and defendant moved for a directed verdict. These motions were denied. Verdict for plaintiff in the sum of $1,450 was returned. Defendant moved for judgment notwithstanding or a new trial, and from an order denying her blended motion she appeals.

Appellant states in her brief: "The ultimate questions in this appeal are: (1) Had plaintiff departed from the course of his employment at the time the accident occurred; if not (2) were plaintiff's employer and defendant engaged in a joint enterprise or in the accomplishment of the same or related purposes within the provisions of   *   *   *   the Minnesota Workmen's Compensation Law; if so (3) had plaintiff made a binding election in accepting compensation from his employer's insurer so as to bar this action; and (4) was either party negligent?"

Having considered the record in light of these questions, we are of the opinion that the trial court must be affirmed because there is evidence from which the jury could reasonably conclude (1) that plaintiff's employer and defendant were not engaged in furtherance of a common enterprise or the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof; and (2) that defendant was negligent and that such negligence was the sole proximate cause of plaintiff's injury.

■ It is necessary that we decide whether or not plaintiff's employer and defendant, both insured, were engaged in the due course of business (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes in operation where the injury was received at the time thereof because, assuming that plaintiff elected to receive compensation from his employer, recovery in this, a common-law action, is pre-

cluded if such relationship existed. 3 Mason Minn. St. 1940 Supp. § 4272-5. Plaintiff's employer was in the business of selling groceries at wholesale to retail grocers, such as defendant, who in turn retailed such products to the public. In light of our decision in the recent case of Tevoght v. Polson, 205 Minn. 252, 254, 285 N. W. 893, 894, it cannot reasonably be argued that employers standing in such a relation to one another are engaged in a common enterprise or in the same or related purposes. It was there said:

"Perhaps the case of Rasmussen v. George Benz & Sons, 168 Minn. 319, 325, 210 N. W. 75, 77, 212 N. W. 20, has gone furthest in eliminating an employe's common-law right of action. In that case the plaintiff was an employe of an ice company engaged in delivering ice to the St. Francis Hotel and was injured by the negligence of one of the hotel's employes while the plaintiff was using a stairway on his return from delivering ice to the basement. It was there held that the two employers were engaged in related purposes on the premises and that the plaintiff was limited to recovery under the act. The case was carefully considered and has since been much quoted; but in the subsequent case of Anderson v. Interstate Power Co. 195 Minn. 528, 532, 533, 263 N. W. 612, this court held squarely that the mere supplying of a product by one employer to another did not bring the employers within either clause (a) or clause (b) of the amendment, that is, the vending and delivery of supplies upon the premises of one of the employers does not amount to either a furtherance of a common enterprise or to the accomplishment of the same or related purposes."

The jury could have found that plaintiff's salesmanship efforts had ceased before the parties started for the basement although in that respect the testimony of defendant's son seems much more plausible than that of plaintiff. Neither does it seem reasonable that plaintiff did not know what he was doing when he accepted compensation from his employer's insurer. Regardless of this, however, the holding in the Tevoght and Anderson cases justified

the trial court in concluding that plaintiff's employer and defendant were not, as a matter of law, engaged either in the furtherance of a common enterprise or in the same or related purposes. We have considered the cases cited by appellant but are not persuaded thereby to accept the conclusion that a related purpose appeared.

■ It is undisputed that at some time during the visit which plaintiff made to defendant's store at about noon on November 3 he was invited to accompany Paul Ostrov, son of defendant and manager of the store, into the basement. For present purposes, the reason for giving and accepting this invitation is unimportant. While descending the stairway into the basement plaintiff slipped and suffered the injuries for which damages were sought. Whether or not defendant's negligence caused plaintiff to slip depends upon the condition of this stairway at the time of the fall. Hence we examine the record in an attempt to ascertain what evidence in this respect was disclosed to the jury.

From the testimony it is to be gathered that the basement stairway is situated in the rear of the store and that it consists of 13 steps adjacent to the basement wall on one side and guarded by a 2x4 rail on the other. The first 12 steps are about 9½ inches by 30 inches, and the last step, which is about 2 inches from the basement floor, is about 11½ inches by 26½ inches. Various things stored on and to the side of the stairs reduce the width of the stairway to about 22 inches. It was as plaintiff put his right foot on the last step that he fell. He then noticed a cabbage or lettuce leaf (so much stepped on that he could not tell which) near the step; he also observed signs on the sole of his shoe indicating that there had been contact with this leaf; he was permitted to express the conclusion that he had slipped on the vegetable leaf.

According to the plaintiff, there was a good light at the head of the stairs, but the light at the foot of the stairs was inadequate. Paul Ostrov testified that there was a light practically at the foot of the stairs (100-watt candle power) and that the beams from other lights in the basement aided visibility at that point.

We have considerable doubt whether, considering only the testimony which was adduced concerning the condition of the stairway, negligence on the part of defendant was made to appear. It is conceivable that the jury might have thought that defendant's manager, Paul Ostrov, who testified that vegetables were taken from the cooler in the basement in the morning and returned there at night and who further testified that he walked up and down the stairs about 25 times a day, should have discovered the vegetable leaf which was on the steps and removed it before the time of the accident. Or the members of the fact-finding body might perhaps have concluded that in view of the conceded obstructions in the basement the rays from any lights which were present were not adequate to provide a reasonably safe light on the steps there located. But whatever doubts we have in respect to the conclusions which could reasonably be drawn from the testimony appear to be resolved by the fact that in this case, with the consent of counsel on both sides, the jury was permitted to view the premises involved and to take any observations made by them as independent evidence of the condition of the stairway at the time of the accident. We quote from the record:

Mr. Durham: "If the court please, I would suggest that the jury be permitted to view the premises, under such safeguards as the court would care to lay down.

Mr. Bourgin: "We would have no objection to that.

The Court: "Well, is it agreed, gentlemen, that the jury may be taken by the officer to view the premises, and that they may make an inspection of the premises, the stairway and everything in connection with it that pertains to the issues in this lawsuit?

Mr. Durham: "Yes.

The Court: "And take what they see there as independent evidence?

Mr. Durham: "Yes.

Mr. Bourgin: "No objection.

Mr. Durham: "No objection.

The Court: "All right. Wait a minute. How far is it from the courthouse?

Mr. Bourgin: "About six blocks.

The Court: "Just a nice walk for the jury. You may swear the officer, Mr. Clerk.

"(Officer duly sworn to take charge of the jury.)

The Court: "Now, ladies and gentlemen, the officer will accompany you over to the place in question and you will have a chance to inspect this stairway and the premises to which reference has been made in the testimony, and it is agreed here by counsel that you may view everything and take what you see there as independent evidence in the case. Ordinarily a view is only permitted for the purpose of enabling the jury to better understand and apply the evidence that is given in court, but under the stipulation that has been made in open court you may take into consideration as evidence everything that you see there. And I think you may report again tomorrow morning at 9:30 here. You do not need to come back here this afternoon. 9:30 o'clock tomorrow morning.

Mr. Bourgin: "And may it be stipulated that that visit will include an inspection of the vegetable room?

Mr. Durham: "Yes, everything they want to see. In the presence of plaintiff's counsel I instructed Mr. Ostrov to turn on the light, because the officer may not know about it, and then to remove himself from the scene."

The jury was thus permitted to enter upon a fact-finding expedition, the results of which have not been and could not be made available to us. The jury may have observed conditions with respect to the stairway in the Ostrov grocery store which would lead inescapably to the conclusion that defendant negligently failed to keep those stairs in a reasonably safe condition for persons invited to go into the basement. In such a case we do not feel that we can rightfully reverse their conclusion. See 4 Wigmore, Evidence (3 ed.) § 1168.

Affirmed.