MYRON J. VOLDING v. ROY M. HARNISH,
INDIVIDUALLY AND *d. b. a.*
FEDERATED STORE, AND ANOTHER.
ROY M. HARNISH, RESPONDENT.[1]

February 15, 1952.

No. 35,760.

[1]Reported in 51 N. W. (2d) 658.

*William H. DeParcq* and *Chester D. Johnson,* for appellant.
*Dancer, Montague, Applequist & Lyons,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for personal injuries brought by plaintiff, Myron J. Volding, against defendant Roy M. Harnish, lessee of a store building at Cloquet in which he operated what is known as a "Federated Store," and defendant C. A. Carlson, a building contractor employed by Harnish to make improvements therein. The jury re-

turned a verdict for plaintiff in the sum of $22,500 against Harnish only, and for convenience he will hereinafter be referred to as defendant. On July 21, 1950, the trial court made its order granting defendant's motion for judgment notwithstanding the verdict. This is an appeal from the judgment subsequently entered.

The accident occurred August 21, 1947, the day prior to defendant's initial opening of the Federated Store in Cloquet, when plaintiff fell through a door in the described building into the basement some nine feet below.

At the time of the accident, plaintiff was an employe of Butler Brothers, an Illinois corporation which engages in a wholesale mercantile business on a national scale. It maintains two divisions, whose functions are the establishment of retail stores for the sale of its products in various locations throughout the country. One such division, known as the "Ben Franklin" division, procures the establishment of retail variety stores; while the other, known as the "Federated" division, sponsors establishment of stores for the sale of its dry goods products. Plaintiff was operating manager of the Federated division.

Butler Brothers maintains no direct financial interest in the retail stores thus established, but does have a close relationship with the individual owners thereof. It enters into contracts with them under which they agree to handle Butler Brothers' products exclusively in exchange for franchises to such effect and the right to use the Ben Franklin or Federated Store name in connection with their respective stores; and it provides active aid and assistance for them in advertising and merchandising the products of Butler Brothers thus furnished.

During 1946, Butler Brothers made a survey of the area around Cloquet and determined that conditions there merited the establishment of a Federated Store in that city. It obtained a lease on certain business property there, and its representative then called upon defendant, who at that time conducted a Ben Franklin Store in Cloquet, and suggested to him that he also take over the Federated Store franchise. Defendant agreed and, after

paying Butler Brothers $5,600 for services to be performed by the latter, on December 3, 1946, was granted a franchise to use the Federated Store name in Cloquet and an assignment of the lease above described.[2]

Three stores were to occupy the leased premises. They were the Ben Franklin Store and the Federated Store to be operated by defendant, and an apparel shop to be operated by his wife. Considerable remodeling of the building became necessary by reason thereof. Pursuant to an arrangement with Butler Brothers, C. A. Carlson was employed by defendant to effect such remodeling and to furnish the labor and material in connection therewith.

Blueprints therefor furnished by Butler Brothers called for the construction of a freight chute from a loading platform adjacent to the rear wall of the building to the basement for the delivery of merchandise direct to the basement. An opening was made in the rear wall, and a door hung thereon for this purpose. Later, another opening was made in a wall within the structure also adjacent to the proposed freight chute and a door hung thereon. The latter opening was not called for in the original plans but was ordered by Butler Brothers and defendant, so that merchandise might be brought directly to the main floor from the receiving platform without first going to the basement.

Before the freight chute was constructed, the contractor was directed by Butler Brothers to leave this work and to take care of other necessary remodeling. On the day of the accident the two openings had been completed, and doors had been placed thereon which (the chute not having been constructed) opened onto an empty space above the basement floor some nine feet below.

[2]This franchise was nonassignable; the lease was terminable upon surrender of the franchise by Harnish. It contained an option for purchase of the property. Butler Brothers likewise had an option to purchase the business if Harnish determined to sell. Harnish was to purchase all merchandise from Butler Brothers, unless the latter consented to purchase from other wholesalers. The bookkeeping system was to conform to an approved system set up by Butler Brothers. Financial reports were to be sent to Butler Brothers.

Under the agreement, Butler Brothers were to furnish defendant with its services in equipping the store and preparing for its opening on August 22, 1947. Such services were to include the selection and arrangement of merchandise in the store, and employes of Butler Brothers skilled in this phase of the work were sent to Cloquet prior to the opening to assist defendant's sales employes therein. It was in this connection that plaintiff was present the day of the accident. His duties were to check on this work, to ascertain whether the merchandise and displays were properly arranged, to determine whether additional merchandise was necessary, and, in general, to otherwise assist wherever possible.

Plaintiff had been so engaged for approximately an hour and a half before the accident occurred. He then turned toward the back of the store and proceeded to the door which opened onto the vacant space where the freight chute was to be constructed. He opened it, stepped into the void, and fell onto the concrete floor of the basement, thereby sustaining the injuries involved in this action.

At the close of the evidence, defendant's counsel moved for a directed verdict on the ground that it appeared as a matter of law that Butler Brothers and defendant were engaged in the furtherance of a common enterprise for the accomplishment of the same or related purposes in operation on defendant's premises when the injury was received; hence, that under M. S. A. 176.06, subd. 1, plaintiff's common-law remedy against defendant was barred.[3] The denial of this motion was subsequently set forth by defendant

---

[3]M. S. A. 176.06, subd. 1, provides:

"Where an injury or death for which compensation is payable under circumstances also creating a legal liability for damages on the part of any party other than the employer, such party being at the time of such injury or death insured or self-insured in accordance with section 176.03, the employee in case of injury, or his dependents in case of death, may, at his or their option, proceed either at law against such party to recover damages or against the employer for compensation, but not against both.

"* * * the amount thereof, manner in which, and the persons to whom

as one of his grounds for judgment notwithstanding the verdict or for a new trial.

Neither counsel for plaintiff nor counsel for defendant requested that the court charge the jury on the issue of common enterprise or the accomplishment of the same or related purposes, as covered by § 176.06, subd. 1, and no instruction was given thereon.

In a memorandum attached to its order for judgment notwithstanding the verdict and made a part therof, the trial court stated:

"It seems to the Court that the two employers, Butler Brothers and Harnish were engaged in the furtherance of a common enterprise within the meaning of the Statute, either in the ultimate objective of disposing of merchandise, or in the immediate, specific job of readying the store for business. Butler Brothers Company was doing more than selling and delivering merchandise or furnishing a service to Harnish. * * * [it] had a regular 'Store Opening' department, which, with a considerable staff of employees were engaged, together with Harnish's employees, in readying the store for the grand opening. Volding was manager of Butler's Federated Stores Department and it was in his line of duty that he was present in Harnish's store at the time. * * *

"* * * It seems to me that the employees of Butler Brothers and Harnish alike, in the work they were engaged in on the premises, were subject to the same risk. The duty that is claimed to have been violated was owing equally to both groups of employees. * * *

\* \* \* \* \*

the same are payable, shall be as provided for by the workmen's compensation act, and not otherwise; * * *

\* \* \* \* \*

"The provisions of subdivision 1 of this section shall apply only where the employer liable for compensation and the other party or parties legally liable for damages were both either insured or self-insured and were engaged in the due course of business, (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof, and not otherwise."

"Counsel for both parties took the position at the trial that the question whether Butler Brothers and Harnish were engaged (a) in the furtherance of a common enterprise or (b) in the accomplishment of the same or related purposes was a question of law for the Court and not of fact for the jury. Neither side asked that the question be submitted to the jury in the event its motion for a directed verdict on this issue be denied. No exception was taken to the action of the Court in not submitting the question to the jury. I take it, therefore, that both parties are now foreclosed from questioning the procedure that was followed."

Plaintiff asserts (1) that this statutory provision is inapplicable, since Butler Brothers and defendant were not engaged in a *common enterprise* nor in the *accomplishment of the same or related purposes* within the meaning thereof; (2) that, even if they were thus engaged, plaintiff was not so engaged; and (3) that, even if plaintiff, as representative of his employer, was thus engaged, the hazard which resulted in his injury was not created by such mutual engagement.

■ M. S. A. 176.06, subd. 1, has no counterpart in the workmen's compensation legislation of other states. There have been a substantial number of decisions interpreting it. For a summary thereof, see 27 Minn. L. Rev. 585.

In Gleason v. Geary, 214 Minn. 499, 500, 8 N. W. (2d) 808, 809, the terms "common enterprise" or "related purposes" as used in § 176.06, subd. 1, were limited to situations where the respective employes of two or more employers were found to be "engaged on the same project and thereby exposed to the same or similar hazards." The test there applied had previously been suggested in the concurring opinion of Mr. Justice Pirsig in Gentle v. Northern States Power Co. 213 Minn. 231, 6 N. W. (2d) 361. It was adhered to in Johnson v. City of Duluth, 216 Minn. 192, 12 N. W. (2d) 192.

■ Based on this test, before the statute becomes applicable, it must be established that the injured employe was actually working

on the same project with the employes of the third party so as to be exposed with them to the same or similar hazards.

Here, the evidence establishes that defendant had entered into an agreement with Butler Brothers whereby, as he testified, he "was to be presented with these two stores, the Ben Franklin and the Federated Stores, in their entirety, open and ready to take over business. * * * I was to be presented free of responsibility in any of the detail work involved in establishing the place, the fixtures and the merchandise, the lay-out of the stores."

On the date of the injury, plaintiff had arrived at the store to carry out the obligations of his employer in bringing about the above result. Under his control and direction were other employes of Butler Brothers who had various functions in connection with preparing defendant's store for the opening. These functions included preparation of the sales floor, unpacking, pricing, and placing of merchandise, trimming of windows, placing of cash registers, instructing defendant's sales organization, preparing advertising, work in the stock rooms, and like activities. In performing this work, the employes of Butler Brothers worked closely with defendant's store manager, Kenneth P. Johnson, and other employes of defendant.

On the day preceding the opening, many of Butler Brothers' employes, all subordinates of plaintiff, were present making final preparations for such opening. As plaintiff testified:

"Everybody was pretty active getting ready for the opening. There was plenty of things to be done. One was getting the window displays. Another was doing something else. Everyone was doing something.

"Q. When you say everyone, are you referring to Mr. Mathews, Mr. Westerich, Mr. Geire, Mr. Elmland [employes of Butler Brothers]?

"A. * * * Yes, they were all doing something.

* * * * *

"Q. Who else was active there? Who else?

"A. Naturally the owner, Mr. Harnish; his employees there were all busy; everybody.

* * * * *

"Q. Everybody was there working together to get all these last minute preparations done?

"A. That's right."

When the foregoing facts and admissions are considered, the conclusion cannot be escaped that plaintiff and the employes of defendant were working side by side on the same premises on the same project with the same objectives in view and subject to the same hazards and risk of injury. The relationship of the respective employers was far beyond that of the ordinary relationship existing between wholesaler and retailer, which formed the basis of our decision in Smith v. Ostrov, 208 Minn. 77, 292 N. W. 745. Accordingly, we must hold, as did the trial court, that the evidence was sufficient to sustain a finding that plaintiff was engaged in a common enterprise with the employes of defendant within the test laid down in Gleason v. Geary, 214 Minn. 499, 8 N. W. (2d) 808, so as to make the terms of § 176.06, subd. 1, effective in limiting his common-law action against defendant.

■ Plaintiff contends that notwithstanding this he may still assert his common-law remedy because the hazard which produced his injury was not created as the result of the mutual engagement of the respective employes of Butler Brothers and defendant. Our decisions, however, have indicated that it is only necessary that each group of employes be exposed or subjected to the same or similar hazards, and that it is the exposure to, rather than the creation of, such hazards which makes the statute applicable. Gleason v. Geary and Gentle v. Northern States Power Co. *supra*. Here, as outlined above, the hazard which produced plaintiff's injury was common both to the employes of Butler Brothers and to those of defendant.

■ Plaintiff asserts that his activity at the time of the injury was separate and apart from the common objective of the parties.

Whether, if this was true, his presence on the premises at the time of the accident would have still brought him within the terms of the statute is not necessary to determine here. By his own testimony, it was established that his trip to the rear of the premises where the accident took place was in conjunction with the general objectives for which both groups of employes were working, that is, the opening of the store on the following day. He testified:

"Q. Well, now, just for what purpose did you go to the rear?

"A. Looking over the different departments, looking over the store.

"Q. For the purpose of looking over the store?

"A. Yes.

\* \* \* \* \*

"Q. Isn't it true that there was merchandise in the rear part of the store when you got back there?

"A. Sure, that and the basement, both.

\* \* \* \* \*

"Q. So when you went back there you were interested in what stock of merchandise there might be in the rear of the store or in the basement?

"A. Sure."

This testimony shows clearly that at the time of the accident plaintiff was engaged in performing services directly related to the opening of the store which was to take place on the following day. Defendant's employes were engaged in a like activity at the time. Clearly, therefore, § 176.06, subd. 1, governed plaintiff's subsequent action for the injuries he then sustained.

■ The question of mutual engagement in a common enterprise or in the accomplishment of the same or related purposes within the meaning of § 176.06, subd. 1, was not submitted as a fact question for the jury's consideration. Neither party to this appeal requested its submission nor took exception to the court's action in not submitting it, nor is such action asserted as a ground for reversal here. The parties having submitted to the court a dis-

puted issue of fact, its order granting judgment notwithstanding had the effect of a finding thereon. Since there is support therefor in the evidence, it should be sustained.[4] However, we can visualize situations where the determination of the question might properly be for the jury.[5]

Affirmed.

---

[4]Board of Education v. Sand, 227 Minn. 202, 34 N. W. (2d) 689; Meiners v. Kennedy, 221 Minn. 6, 20 N. W. (2d) 539; S. Bader & Sons v. Gensler, 191 Minn. 571, 225 N. W. 97; 1 Dunnell, Dig. & Supp. § 410.

[5]Smith v. Ostrov, 208 Minn. 77, 292 N. W. 745; Anderson v. Interstate Power Co. 195 Minn. 528, 263 N. W. 612; Hill v. M. St. P. & S. S. M. Ry. Co. 160 Minn. 484, 200 N. W. 485; 46 Harv. L. Rev. 1086, 1095.

