Donald SCHLEICHER, Respondent,

v.

LUNDA CONSTRUCTION
COMPANY, Respondent,

Advance Shoring Company,
Petitioners, Appellant.

ADVANCE SHORING COMPANY, defendant and third party plaintiff,
petitioner, Appellant,

v.

CEMSTONE PRODUCTS COMPANY,
third party defendant, Respondent,

John Edman, Third Party Defendant.

Nos. C1–85–2035, C6–85–2080.

Supreme Court of Minnesota.

May 22, 1987.

Richard T. McHaffie, St. Paul, for appellant.

Patrick K. Horan, Mark D. Streed, Minneapolis, for Donald Schleicher.

James A. Schaps, John H. Guthman, St. Paul, for Lunda Const.

Mark A. Fonken, St. Paul, for Cemstone Products.

WAHL, Justice.

This appeal raises the question of the proper application of the election of remedies and common enterprise provisions of the workers' compensation law, Minn.Stat. § 176.061, subds. 1 and 4 (1986).

Plaintiff Donald Schleicher, a truck driver injured while unloading concrete at a construction site, sued general contractor Lunda Construction Co. and subcontractor Advance Shoring Co. in tort for negligence, after collecting workers compensation benefits from his employer, Cemstone Products Co. Ramsey County District Court found that Schleicher's common law action for negligence against Advance was barred

by Minn.Stat. § 176.061, subds. 1 and 4 because his employer and third party Advance were engaged in a common enterprise, and the court granted summary judgment for Advance. The court of appeals reversed, on the ground that the mere supplying of a product by Cemstone to Advance did not trigger the common enterprise provision of section 176.061, subds. 1 and 4, 385 N.W.2d 15. We affirm.

We take the facts, as we must, in the light most favorable to the parties against whom summary judgment was granted. *Abdullah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

In August 1974, Cemstone, Schleicher's employer, was supplier of concrete to a bridge construction job on I–94. Advance, another subcontractor, owned and ran a hopper-conveyor system that received the concrete and transported it along the bridge deck to the placing and finishing crew. Lunda, the general contractor, did the placing and finishing of the concrete. Advance had two employees at the construction site, one at either end of the hopper-conveyor system. These two employees were responsible for running the conveyor system, regulating the amount of concrete in the hopper, and distributing the concrete to the Lunda finishing crew.

The Cemstone truck drivers delivered the concrete from the plant to the job site. A Cemstone employee was at the job intermittently to coordinate the deliveries. A driver would pick up a truckload of concrete at the plant and drive through traffic to the construction site. At the site, the driver would pull onto the unpaved area, back up 100 feet or so to the hopper, and pull in next to another truck. Two trucks could park side by side at the hopper with about twelve to eighteen inches between them. The driver would climb up on the back of the truck and, when the truck beside him had finished, would swing his truck's chute into the hopper and work the controls for releasing the concrete into the hopper. When the unloading was finished, the driver would scrape out the chute. This was a fast operation and one of the Advance employees would occasionally help scrape out the chute, swing it out of the way, and tell the driver to pull away. The next truck, already at the hopper, would start unloading.

At the time of the accident, Schleicher was delivering his third load of the morning to the site. As the truck beside him at the hopper was pulling away, its chute caught on the hopper and caused the whole hopper-conveyor system to move. The equipment swung and pinned Schleicher against his truck, injuring him. Schleicher received workers compensation benefits from his employer Cemstone.

The question is whether the election of remedies and common enterprise provisions of the workers' compensation law apply to the facts of this case so as to bar the employee from his common law negligence action against Advance, a third party. Minnesota Statutes § 176.061, subds. 1 and 4 (1986), provides that an injured employee may proceed against the employer for benefits or against a third party for damages, but not against both if the employer and the third party are engaged in a common enterprise.[1]

Prior to the adoption of the Workmen's Compensation Act in 1913, an injured employee had a common-law right of action

---

**1.** Minn.Stat. § 176.061, subd. 1 and 4 (1986), reads:

Subd. 1. [Election of remedies.] If an injury or death for which benefits are payable occurs under circumstances which create a legal liability for damages on the part of a party other than the employer and at the time of the injury or death that party was insured or self-insured in accordance with this chapter, the employee, in case of injury, or the employee's dependents, in the case of death, may proceed either at law against that party to recover damages or against the employer for benefits, but not against both.

\* \* \* \* \* \*

Subd. 4. [Application of subdivisions 1, 2, and 3.] The provisions of subdivisions 1, 2, and 3 apply only if the employer liable for benefits and the other party legally liable for damages are insured or self-insured and engaged, in the due course of business in, (a) furtherance of a common enterprise, or (b) in the accomplishment of the same or related purposes in operations on the premises where the injury was received at the time of the injury.

against the party or parties causing the injury. With the adoption of the Act, an employee injured in the course of employment had to make an election of remedies. The employee could choose to receive benefits from the employer under the act, or to bring an action in negligence against a third-party tortfeasor that was also subject to the act but could not recover damages greater than the amount fixed by the compensation act. Act of April 24, 1913, ch. 467, § 33, 1913 Minn.Laws 691–92. The legislature amended the act in 1923 to provide that the election of remedies restriction applied only if the employer and the third party were in a common enterprise or working for the same or related purposes. Act of April 16, 1923, ch. 279, § 1, 1923 Minn.Laws 374–75. Section 176.061, subds. 1 and 4 restored to the employee who accepted workers' compensation benefits the right to bring an action for common-law negligence in an unlimited amount except where prohibited by statute, against a third party tortfeasor unless that third party was in a joint enterprise with the employer.[2]

We recounted the history of section 176.-061 in *McCourtie v. United States Steel Corp.*, 253 Minn. 501, 504–05, 93 N.W.2d 552, 555–56 (1958), and recognized that the legislature intended by the 1923 amendment "to enlarge both the rights and remedies of the injured workman and the liability of the third-party tortfeasor to the injured person." *Id.* at 505, 93 N.W.2d at 556. We set forth precisely the three part test for barring an injured worker's common-law action against a negligent third party employer:

(1) The employers must be engaged on the same project;

(2) The employees must be *working together* (common activity); and

(3) In such fashion that they are subject to the same or similar hazards.

*Id.* at 506, 93 N.W.2d at 556 (emphasis in original). The test emphasizes the common activities of the workers rather than the common goals of the employers. We found

no joint enterprise in *McCourtie*, where an employee of a plumbing contractor was injured by a piece of steel dropped by an employee of a steel construction contractor, because the work of the employees of the two employers was "not related except in a vague, general way looking toward the completion of a structure." *Id.* at 510, 93 N.W.2d at 559.

More recently in *Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 906 (Minn.1984), we found no joint enterprise between city firefighters and NSP employees fighting a fire at the Commodore Hotel. Though the goal was the same, to fight the fire, the functions and risks of the two groups were different; the NSP people reached the gas shut-off valve, while the firefighters went inside the building, evacuated the tenants and extinguished the fire. Similarly, while the goals of Advance and Cemstone were related, the functions of the workers and the risks were distinct. The Cemstone drivers drove in traffic to the construction site, maneuvered their trucks in a narrow space, and unloaded their concrete. The Advance employees ran the hopper and conveyor system, watched the generator, controlled the amount of concrete in the hopper, and occasionally helped expedite the unloading process by lowering or raising the chutes for the drivers. While there was some overlap, as in *Kaiser*, the employees were involved in basically different activities and faced different hazards.

Advance argues that it was all one coordinated activity. The Cemstone concrete and drivers, the Advance hopper-conveyor system, and the Lunda placing and finishing crew all had to be available at the same time. Concrete was delivered to the site and spread directly into place. If it was delivered too slowly, an Advance employee would pitch in and help expedite the unloading. All this, Advance argues, points to a common activity. However, the duties of the delivery crew and of the conveyor and finishing crews overlapped minimally and were not interdependent except in the

---

**2.** These provisions have remained essentially unchanged since 1923. *Compare* Minn.Stat.

§ 176.061 (1986) *with* Act of April 16, 1923, ch. 279, § 1, 1923 Minn.Laws 374–75.

general way that construction work depends on delivery.

A long line of cases holds that mere delivery does not establish a common enterprise. *See, e.g., Urbanski v. Merchants Motor Freight*, 239 Minn. 63, 71, 57 N.W.2d 686, 691 (1953); *Tevoght v. Polson*, 205 Minn. 252, 255, 285 N.W. 893, 894 (1939). "One who merely supplies or delivers a product to an employer is not engaged on the same project with him," even though the employees of both companies joined in the unloading. *Urbanski v. Merchants Motor Freight*, 239 Minn. at 70–71, 57 N.W.2d at 690–91. In *Urbanski* a loading and unloading crew at the company's loading dock and a truck driver working with them to unload his truck were held not to be involved in a common project. Our case is similar. Schleicher was delivering concrete for use at the construction site and the Advance employees received it, but these actions did not make them part of a joint enterprise.

Only a few cases cited by Advance have found a common enterprise, and those were early cases which have for the most part lost their vitality. In *Rasmussen v. George Benz & Sons*, 168 Minn. 319, 321, 324–25, 210 N.W. 75, 75–76, 77 (1926), an employee of an ice company delivering ice to a building was found to be engaged in the same or related purposes with the building owner, but this case was expressly limited by *Tevoght v. Polson*, 205 Minn. at 254–55, 285 N.W. at 894, which held that mere delivery did not establish a common enterprise. In *Seidel v. Nicollet Ave. Properties Corp.*, 202 Minn. 569, 572, 279 N.W. 570, 572 (1938), an elevator repair company was held to be in a common enterprise with the company whose elevator was being repaired, but *Gleason v. Geary*, 214 Minn. 499, 504–05, 509, 8 N.W.2d 808, 811, 813 (1943), subsequently held that a company doing repairs was not in a common enterprise with the company for which it was doing the repairs. In *Volding v. Harnish*, 236 Minn. 71, 79, 51 N.W.2d 658, 663 (1952), employees of a wholesaler and employees of a franchise retailer were working side by side to set up for the opening of a new franchise store and were found to be

in a common enterprise. We do not find this case persuasive for Advance, however, because the employees in *Volding* were working more closely than the employees of Advance and Cemstone.

We find, in a search of our cases, no solid basis for a common enterprise. We hold, therefore, that the election of remedies and common enterprise provisions of the workers' compensation law, Minn.Stat. § 176.-061, subds. 1 and 4, do not apply to the facts of this case so as to bar the employee from his common law negligence action against a third party. Schleicher may sue the third party Advance for damages in tort. The granting of summary judgment was improper. We affirm the decision of the court of appeals.

Affirmed.

KELLEY, J., dissents.

KELLEY, Justice (dissenting):

I respectfully dissent. I would reverse the court of appeals and affirm the trial court's grant of summary judgment on the grounds that as a matter of law there existed here a common enterprise exempting the appellants from common law liability. As the majority opinion demonstrates, resolution of the "common enterprise" issue is usually on an ad hoc basis depending upon relevant facts. In this case no factual dispute exists relative to the paving enterprises. While examination of our prior cases in this area clearly indicates that they are largely irreconcilable on principle, nevertheless, it occurs to me that if this continuous, unified paving operation, demanding the closest coordination of work activity among these three concerns and their employees, does not constitute in law a common enterprise, it will, indeed, be an extremely rare combination of facts and circumstances that will give rise to such a finding. I concur with the trial court's finding that Cemstone's connection with this closely integrated paving project consisted of much more than merely delivering concrete to the job site *at the time of the injury*. So far as the actual paving process was concerned, the employees of the

three contractors shared closely coordinated activities at the job site and equally shared similar risks of injury resulting therefrom.