Michael C. O'MALLEY,
et al., Appellants,

v.

ULLAND BROTHERS, et al.,
Max Johnson Trucking,
Respondents.

No. C1–94–2110.

Court of Appeals of Minnesota.

April 18, 1995.

Review Granted June 14, 1995.

Kenneth R. White, Farrish, Johnson & Maschka, Mankato, for appellants Michael C. O'Malley, et al.

Janet Stellpflug, Sheryl A. Zaworski, Gilmore, Aafedt, Forde, Anderson & Gray, P.A., Minneapolis, for respondents Ulland Brothers, et al.

Diane Kotula, Johnson, Lynn & Associates, Eden Prairie, James H. Malecki, Gislason, Dosland, Hunter & Malecki, Mankato, for respondent Max Johnson Trucking.

Considered and decided by PETERSON, P.J., HUSPENI and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

Appellant Michael C. O'Malley, an employee of a subcontractor on a road construction project, received workers' compensation benefits after he was injured by the negligent act of one of the general contractor's employees. The district court determined that O'Malley was precluded from bringing a negligence action against the general contractor and the negligent employee under the common enterprise doctrine. We affirm.

## FACTS

Respondent Ulland Brothers contracted with the State of Minnesota to resurface a portion of an interstate highway. In preparing its bid, Ulland Brothers sought a price from respondent Max Johnson Trucking (Max Johnson) to perform certain hauling work necessary to complete the repairs. After Ulland Brothers received the contract, it executed a purchase order with Max Johnson to perform the hauling on a per unit basis.

To start the project, Ulland Brothers employees and certain subcontractors set up barricades and signs to warn and detour traffic onto a lane conversion. The old roadway surface was then removed and hauled away by subcontractors. Another subcontractor installed pipe in a median trench dug by Ulland Brothers employees. Ulland Brothers employees then buried the pipe.

The next step was to determine where soft spots existed in the roadway. These areas were excavated by Ulland Brothers employees so that they could be filled with more stable material. The excavated material was loaded into Max Johnson dump trucks. The areas where the material was removed were called "subcuts." Max Johnson employees were also responsible for bringing the fill material, known as sugar sand, to the subcuts. Ulland Brothers employees then leveled the sand dropped by the Max Johnson drivers with motor graders. Repairing of the subcuts was an integral aspect of the project.

Occasionally, the dump trucks driven by Max Johnson employees would become stuck in the soft sand. A truck that became stuck had to be pushed out of the sand by a bulldozer. During the construction project, both Max Johnson bulldozers and Ulland Brothers bulldozers were routinely used to free stuck Max Johnson trucks.

Michael O'Malley was delivering a load of sand to a subcut when he became stuck. Ulland Brothers employee John Lee was in the subcut smoothing out material delivered by the Max Johnson trucks. Since no Max

Johnson bulldozers were in the area, Lee used the bulldozer he was operating to push O'Malley and the dump truck he was driving out of the sand. In freeing O'Malley and his truck, however, Lee pushed with much greater force than normal. As a result, O'Malley was thrown about the cab of the dump truck and injured. Due to his injuries, O'Malley recovered workers' compensation benefits from his employer Max Johnson.

O'Malley and his wife (appellant Mary Jo O'Malley) then brought the present action against Ulland Brothers and Lee, who in turn joined Max Johnson as a third-party defendant. The district court granted summary judgment for respondents after determining that Ulland Brothers was engaged in a "common enterprise" with Max Johnson. The court concluded that since O'Malley elected to receive workers' compensation benefits, his negligence action is barred by the common enterprise doctrine. This appeal followed.[1]

### ISSUE

Did the district court err in determining that because appellant Michael O'Malley received workers' compensation benefits, he is barred from bringing a negligence action under the common enterprise doctrine?

### ANALYSIS

■ On appeal from summary judgment, the role of the reviewing court is to review the record for the purpose of answering two questions: (1) whether there are any genuine issues of material fact, and (2) whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). Summary judgment is proper when no material issues of fact exist and one party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03.

■ The evidence must be viewed in a light most favorable to the party against whom judgment was granted. *See Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). The party opposing a summary judgment motion, however, cannot rely upon mere general statements of fact, but rather must demonstrate that specific facts are in existence which create a genuine issue for trial. *Hunt v. IBM Mid Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 855 (Minn.1986).

The question in this case is whether the election of remedies and common enterprise provisions of the workers' compensation law apply to bar appellants from pursuing a common law negligence action against Ulland Brothers and Lee. We agree with the district court that appellants cannot pursue such action.

Minn.Stat. § 176.061, subd. 1 (1990) provides:

If an injury * * * for which benefits are payable occurs under circumstances which create a legal liability for damages on the part of a party other than the employer and at the time of the injury * * * that party was insured or self-insured in accordance with this chapter, the *employee * * * may proceed either at law against that party to recover damages or against the employer for benefits, but not against both.*

(Emphasis added.)

Subdivision 4 provides:

The provisions of subdivision 1 * * * apply only if the *employer* liable for benefits *and the other party* legally liable for damages are insured or self-insured and *engaged,* in the due course of business *in,* (a) *furtherance of a common enterprise,* or (b) in the accomplishment of the same or related purposes in operations on the premises where the injury was received at the time of the injury.

(Emphasis added.)

■ The effect of these provisions is that if the party and employer are engaged in a common enterprise, an injured employee may proceed against the employer for workers' compensation benefits or against a third party for damages, but not against both. *Schleicher v. Lunda Constr. Co.*, 406 N.W.2d 311, 312 (Minn.1987).

1. Max Johnson Trucking has not submitted a     brief on appeal.

■ In *McCourtie v. United States Steel Corp.*, 253 Minn. 501, 506, 93 N.W.2d 552, 556 (1958), the supreme court set forth a three-part test for barring an injured worker's common law action against a negligent third-party employer:

(1) The employers must be engaged on the same project;

(2) The employees must be *working together* (common activity); and

(3) In such fashion that they are subject to the same or similar hazards.

(Emphasis in original.)

This test "emphasizes the *common activities of the employees* as opposed to the *common activities of the employers.*" *Id.* (emphasis in original). The court further explained the common activity test stating:

> Before such common activity can be said to exist there must be work in which both sets of employees participate * * *. Where however two employers perform different types of work, such as steel construction work and plumbing, and where the performance of these jobs is not related except in a vague, general way looking toward the completion of a structure, and where the activities of the two sets of employees have nothing in common and do not share or join in any of the work between themselves, it cannot be said that the employees are within the "common activities of the employees test."

*Id.* at 510, 93 N.W.2d at 559.

■ In the present case, there is no dispute that both Ulland Brothers and Max Johnson were engaged on the same project, i.e., construction of the highway. The more difficult question is whether the Ulland Brothers and Max Johnson employees were "working together." Several Minnesota cases have involved this question and are instructive.

In *Schleicher*, the injured worker's employer was a supplier of concrete to a bridge construction job. Another subcontractor owned and ran a hopper-conveyer system that received concrete and transported it along the bridge deck to the placing and finishing crew. The general contractor did the placing and finishing of the concrete. At the time of the accident, the employee was delivering a load of concrete to the job site. As the truck beside him at the hopper was pulling away, the truck's chute caught on the hopper causing the system to move and thereby injuring the employee.

In rejecting the subcontractor's argument that it was engaged in a common enterprise with the injured worker's employer because the process was all one coordinated activity, the supreme court stated:

> [T]he duties of the delivery crew and of the conveyor and finishing crews overlapped minimally and were not interdependent except in the general way that the construction work depends on delivery.

> \*    \*    \*    \*    \*    \*

> [M]ere delivery does not establish a common enterprise.

*Schleicher*, 406 N.W.2d at 313–14.

By contrast, in *Ritter v. M.A. Mortenson Co.*, 352 N.W.2d 110 (Minn.App.1984), this court determined that the injured employee and the negligent third party were clearly working together and therefore the injured employee could not maintain a third-party negligence action. In *Ritter*, a crane operator hoisted steel beams to a steelworker who connected the beams to the existing structure. The worker was also responsible for signaling commands to the crane operator. The worker was injured when struck by the crane boom. It was undisputed that not only were both employees engaged in the same project (the construction of a bus garage), but that both employees were also engaged in erecting the steel superstructure for the building. *Id.* at 113.

We believe that the facts of the present case fall between those of *Schleicher* and those of *Ritter*. Therefore, in addition to the guidance provided by case law, we shall attempt to discern the legislative intent behind the election of remedies statute. *See* Minn. Stat. § 645.16 (1994) ("object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature").

Minn.Stat. § 176.021, subd. 1a (1990) provides:

Questions of law arising under chapter 176 shall be determined on an *even-handed basis* in accordance with the principles laid down in section 176.001.

(Emphasis added.) [2]

Minn.Stat. § 176.001 (1990) provides:

It is the specific intent of the legislature that workers' compensation cases shall be decided on their merits and that the common law rule of "liberal construction" based on the supposed "remedial" basis of workers' compensation legislation shall not apply in such cases. * * * Employees' right to sue for damages over and above medical and health care benefits and wage loss benefits are to a certain degree limited by provisions of this chapter, and employers' rights to raise common law defenses such as the lack of negligence, contributory negligence on the part of the employee, and others, are curtailed as well.

Under these provisions, we cannot liberally construe the workers' compensation law in an attempt to favor the injured worker.[3] Rather, we must recognize that O'Malley may have forfeited his right to pursue a common law negligence action by electing to receive workers' compensation benefits.

It is clear that Max Johnson's primary job was to deliver materials between the job sites. In practice, however, Max Johnson employees had more than just incidental contacts with Ulland Brother employees, as when Ulland Brothers grader operators assisted Max Johnson trucks stuck in the sand. The completion of the construction project was facilitated by interrelated and coordinated steps involving both Ulland Brothers and Max Johnson employees. Thus, to an extent the work of Ulland Brothers and Max Johnson employees was interdependent in more than just the general way that construction work depends on delivery. *See Schleicher,* 406 N.W.2d at 313–14.

Additionally, in answering the question of whether Ulland Brothers and Max Johnson were engaged in a common enterprise, we must consider the actions of the employees "at the time of the injury." Minn.Stat. § 176.061, subd. 4; *see id.* at 314 (Kelley, J., dissenting). At the time of the injury in this case, O'Malley was engaged in more than just the mere delivery of material to the construction site. His actions were part of a series of interrelated events, involving Ulland Brothers employees, that facilitated the ongoing construction of the highway. Ulland Brothers and Max Johnson employees were working together.

■ Lastly, we address the third prong of the *McCourtie* test and ask whether the Ulland Brothers and Max Johnson employees were subject to the "same or similar hazards." O'Malley argues that he was subject to an additional risk that Ulland Brothers employees did not face; namely, the risk of "live" traffic. While we recognize that there may have been some differences in the hazards faced by Max Johnson and Ulland Brothers employees, the hazards do not have to be identical to find a common enterprise. *See Higgins v. Northwestern Bell Tel. Co.,* 400 N.W.2d 192, 195 (Minn.App.1987), *pet. for rev. denied* (Minn. Mar. 25, 1987). Instead, in determining whether the hazards are similar, we look to the practical dangers incidental to the work. *See McCourtie,* 253 Minn. at 514–15, 93 N.W.2d at 561–62 (hazards faced by steel workers and plumbers were distinct due to the area in which they were working and the nature of the work).

We conclude that the Ulland Brothers and Max Johnson employees were subject to similar hazards. All the employees were working within close proximity to each other and thus were subject to the same on-site hazards. There is no evidence to suggest that the slight additional risks faced by the Max Johnson employees were a practical problem on the job site. Therefore, such additional

2. Minn.Stat. § 176.021, subd. 1a was amended to its current form in 1983. *See* Minn.Laws 1983 ch. 290, § 32. Previously, subdivision 1a provided:

Questions of law arising under chapter 176 shall be determined in accordance with the rules of construction generally applied to all other civil matters.

Minn.Stat. § 176.021, subd. 1a (1982).

3. The mandate of section 176.001 (1990) is in contrast to the recognition in *McCourtie* that the legislature intended by the 1923 amendment "to enlarge both the rights and remedies of the injured workman and the liability of the third-party tortfeasor to the injured person." *McCourtie,* 253 Minn. at 505, 93 N.W.2d at 556.

risks are not sufficient to defeat the finding of a common enterprise.

We conclude that all three prongs of the *McCourtie* test have been satisfied in this case, and that Ulland Brothers and Max Johnson were engaged in a common enterprise. Accordingly, since O'Malley elected to receive workers' compensation benefits, he is barred from bringing a negligence action under Minn.Stat. § 176.061.

## DECISION

The district court properly determined that Ulland Brothers and Max Johnson were engaged in a common enterprise. Therefore, the court did not err in determining that appellants' negligence action is barred by Minn.Stat. § 176.061.

**Affirmed.**